

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| STACEY L. BLACKSHEAR, | ) | No. ED100251 |
| | ) | |
| Claimant/Respondent, | ) | Appeal from the Labor and Industrial |
| | ) | Relations Commission |
| v. | ) | |
| | ) | |
| ADECCO, | ) | |
| | ) | |
| Employer/Respondent, | ) | Filed: February 18, 2014 |
| | ) | |
| and | ) | |
| | ) | |
| AMERICAN HOME ASSURANCE | ) | |
| COMPANY c/o BROADSPIRE | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TREASURER OF THE STATE OF | ) | |
| MISSOURI, Custodian of the Second | ) | |
| Injury Fund, | ) | |
| | ) | |
| Appellant. | ) | |

### Introduction

The Second Injury Fund (SIF) appeals from the Labor and Industrial Relations Commission's (Commission) decision awarding Stacey L. Blackshear (Claimant) permanent and total disability from the SIF. We affirm.

Factual and Procedural Background

On August 29, 2005, Claimant filed a Claim for Compensation alleging she sustained injuries to her back, legs, and body as a whole while working for Adecco (Employer).

On April 12, 2012, a hearing was conducted on Claimant's claims against Employer and the SIF. The parties stipulated that Claimant sustained accidental injuries arising out of and in the course of employment on August 23, 2005; Employer received proper notice of the injury; the claim was made in a timely manner; and Claimant reached maximum medical improvement (MMI) on March 30, 2010.

The administrative law judge (ALJ) noted that neither Employer nor the SIF disputed the fact that Claimant was permanently and totally disabled but they disagreed on the question of whether her disability was the result of the August 2005 injury (primary injury) alone or from a combination of the primary injury and her pre-existing conditions. The ALJ concluded Claimant's permanent total disability (PTD) was the result of the last injury alone, and entered an award in Claimant's favor against Employer and found the SIF was not liable. Employer appealed the ALJ's decision to the Commission.

In July 2013, the Commission issued its decision modifying the ALJ's award. The Commission found Claimant sustained an 85 percent permanent partial disability (PPD) of the body as a whole as a result of the primary injury. The Commission found Claimant had a pre-existing PPD from psychiatric conditions at the time of the primary injury which constituted a hindrance or obstacle to employment and, when combined with the primary injury, resulted in a "worse disability than would have resulted in the

2

absence of [her pre-existing] conditions." The Commission found Claimant had a PTD and that her disability resulted from a combination of her pre-existing psychiatric disability with the effects of the primary injury. One commissioner dissented, asserting the decision of the ALJ awarding PTD benefits against Employer was correct and should be affirmed. This appeal follows.

## Point on Appeal

On appeal, the SIF argues the Commission erred in awarding benefits to Claimant from the SIF because it did not first determine whether the primary injury considered alone resulted in a PTD, in that the uncontradicted and unimpeached testimony of Dr. David Volarich (Volarich) proves Claimant's work accident rendered her permanently and totally disabled.

## Standard of Review

Pursuant to Section 287.495.1,[1] on appeal this Court may modify, reverse, remand or set aside the Commission's award if: (1) the Commission acted without or in excess of its powers, (2) the award was procured by fraud, (3) the facts found by the Commission do not support the award, or (4) there was not sufficient competent evidence in the record to warrant the making of the award.

On review, the Court examines the record as a whole to determine if the award is supported by sufficient competent and substantial evidence, or whether the award is contrary to the overwhelming weight of the evidence. Hampton v. Big Boy Steel Erection, 121 S.W.3d 220, 222-23 (Mo. banc 2003). While we review questions of law de novo, we defer to the Commission on issues of fact. Townser v. First Data Corp., 215 S.W.3d 237, 241 (Mo. App. E.D. 2007). The Commission is the sole judge of the weight

---

[1] All statutory references are to RSMo 2012, unless otherwise indicated.

3

of the evidence and the credibility of the witnesses, which includes the weight to be given expert opinions. George v. City of St. Louis, 162 S.W.3d 26, 30 (Mo. App. E.D. 2005). We do not, however, view the evidence in the light most favorable to the Commission's award. Hampton, 121 S.W.3d at 222-23.

Discussion

Although raised in a single point, the SIF is actually raising two distinct complaints on appeal: (1) the Commission erred by not assessing Employer's liability for the last injury in isolation, but instead considered Claimant's pre-existing psychiatric conditions as well when determining liability for her PTD, and (2) the Commission's award is not supported by sufficient competent evidence in the record.

The determination of whether a claimant is permanently and totally disabled is based upon the claimant's ability to compete in the open labor market. Highley v. Von Weise Gear, 247 S.W.3d 52, 55 (Mo. App. E.D. 2008). "The primary determination is whether an employer can reasonably be expected to hire the employee, given his or her present physical condition, and reasonably expect the employee to successfully perform the work." Id. (internal citations omitted).

Section 287.220 creates the SIF and imposes liability on the fund in certain cases of permanent disability where there is a pre-existing disability. Section 287.220; Hughey v. Chrysler Corp., 34 S.W.3d 845, 847 (Mo. App. E.D. 2000). The SIF is liable where a claimant establishes either that he is permanently and totally disabled due to the combination of his present compensable injury and his pre-existing partial disability or that the combination of his present compensable injury and his pre-existing permanent partial disabilities create a greater overall disability than the sum of the disabilities

4

independently. Highley, 247 S.W.3d at 55; Elrod v. Treas. of Missouri as Custodian of Second Injury Fund, 138 S.W.3d 714, 717-18 (Mo. banc 2004).

"In deciding whether the Second Injury Fund has any liability, the first determination is the degree of disability from the last injury." Hughey, 34 S.W.3d at 847, citing Stewart v. Johnson, 398 S.W.2d 850, 854 (Mo. 1966). A claimant's pre-existing disabilities are irrelevant until employer's liability for the last injury is determined. Hughey, 34 S.W.3d at 847. "If a claimant's last injury in and of itself rendered the claimant permanently and totally disabled, then the Second Injury Fund has no liability and employer is responsible for the entire amount." Id.

On appeal, the SIF contends the Commission did not follow the mandates of Hughey, asserting the Commission "leapt right to a decision" that the combination of Claimant's conditions rendered her totally disabled.

A plain reading of the Commission's decision, however, indicates otherwise. The Commission directly addressed this issue in its opinion, stating:

> Section 287.220.1 requires us to first determine the compensation liability of the employer for the last injury, considered alone. If employee is permanently and totally disabled due to the last injury considered in isolation, the employer, not the Second Injury Fund, is responsible for the entire amount of compensation. "Pre-existing disabilities are irrelevant until the employer's liability for the last injury is determined." *Landman v. Ice Cream Specialties, Inc.*, 107 S.W.3d 240, 248 (Mo. 2003).

The Commission explicitly found that Claimant sustained an 85 percent PPD of the body as a whole as a result of the primary injury. After recognizing the necessity of first determining the liability of Employer for the last injury considered alone, the Commission reiterated its factual findings that Claimant was not permanently totally disabled as a result of the primary injury alone. The Commission repeatedly stated that

5

Claimant's PTD resulted from a combination of her pre-existing psychiatric disability and the effects of the primary injury.

The SIF also, essentially, argues the Commission's award is not supported by sufficient competent evidence in the record. Specifically, the SIF contends that Volarich was the sole medical expert to address the question of whether the primary injury alone resulted in Claimant's PTD, and his testimony unequivocally supported such a finding. The SIF contends Volarich's opinion that Claimant's PTD is the result of the primary injury alone is uncontradicted or unimpeached because he was the only expert to testify to the vocational impact of both the physical and psychiatric components of the primary injury. The SIF asserts the Commission's decision is silent as to why it rejected Volarich's opinion and the Commission erred because it may not, without explanation, disregard uncontradicted and unimpeached testimony.

The SIF's argument misses the mark in several respects. First, a review of the record reveals that Volarich's testimony was not uncontradicted.

Volarich, an osteopathic physician, conducted an independent medical examination of Claimant in August 2010. Following this examination, Volarich concluded that as a result of the primary injury Claimant suffered a 70 percent PPD of the body as a whole rated at the lumbosacral spine due to a disc herniation at L5-S1, a rating which accounts for Claimant's ongoing back pain, lost motion and ongoing left lower extremity radicular symptoms. Volarich testified Claimant had multiple pre-existing psychiatric conditions including bipolar disorder, depression and anxiety. Volarich testified he did not perform any sort of psychiatric evaluation on Claimant, "other than to note that her mental status, she was depressed." Volarich stated he did not hold himself

6

out as a psychiatric expert. In his report, Volarich stated simply, "Disability exists as a result of her psychiatric diseases. I defer to psychiatric evaluation for those assessments." Volarich further testified he did not diagnose Claimant with any psychiatric disorder as a result of the August 2005 accident, stating, "I'd leave that up to psychiatry to assess." However, Volarich ultimately opined that Claimant sustained a PTD as a direct result of the work-related injury and any associated psychiatric disability from this injury standing alone. Volarich explained that his assessment was based upon Claimant's ability to work before the accident, Claimant's assertion that her pre-existing psychiatric conditions were under control, and the significant deterioration in her psychiatric conditions after the primary injury. Volarich further opined that even though Claimant was permanently totally disabled, she may be able to perform some activities on a limited basis within the restrictions he detailed in his report, which included that "[Claimant] should change positions frequently to maximize comfort and rest when needed, including resting in a recumbent fashion."

Dr. David B. Robson (Robson), an orthopedic surgeon specializing in the treatment of spinal disorders, treated Claimant, performing three of Claimant's four back surgeries. Robson testified Claimant sustained a 25 percent PPD of the body as a whole as result of the primary injury. Robson testified Claimant's permanent restrictions are a 20-pound weight limit and no bending, stooping, twisting or awkward positions, which he would classify as light duty restriction. Robson stated that, with regard to her lumbar spine, it would be "fine" if Claimant found work within those restrictions. Robson did not attempt a psychiatric diagnosis.

7

Dr. Wayne Stillings (Stillings), a physician who is board-certified in psychiatry and neurology, evaluated Claimant on October 20, 2008 and October 20, 2010. Stillings testified Claimant's pre-existing psychiatric conditions included bipolar disorder; social phobia; chronic post-traumatic stress disorder; and a personality disorder, with depressive and borderline personality traits. Stillings testified that, as a result of the August 2005 accident, Claimant's bipolar disorder became more severe and she developed a mood disorder with major depressive episodes; an anxiety disorder; and a pain disorder. Stillings concluded Claimant suffered a 40 percent psychiatric PPD of the body as a whole as a result of the primary injury, attributing a 10 percent PPD to each newly developed or aggravated condition. Stillings testified Claimant's pre-existing psychiatric conditions adversely affected her occupational functional capacity, contributing to her termination from two or three jobs and a deficiency of occupational motivation and advancement. Stillings testified Claimant is permanently totally disabled from a psychiatric standpoint. With regard to her ongoing psychiatric treatment, Stillings opined that 25 percent is due to the primary injury and the remaining 75 percent is due to her pre-existing psychiatric conditions.

Dr. Gregg Bassett (Bassett), a physician specializing in general psychiatry, examined Claimant on January 28, 2011. Bassett testified Claimant's pre-existing conditions included a mood disorder (bipolar); an anxiety disorder with features of post-traumatic stress disorder; social phobia; panic attacks; agoraphobia; somatoform disorder and a personality disorder with histrionic, borderline, and dependent traits. Bassett testified the primary injury aggravated Claimant's pre-existing mood, anxiety, somatoform and personality disorders. Bassett testified Claimant would not be able to

8

return to work due to a combination of her pre-existing psychopathology and the injury-related aggravation of the pre-existing psychopathology. Bassett rated Claimant as having a 50 percent psychiatric PPD with half attributable to the pre-existing conditions and half to the injury-related aggravation of her pre-existing psychopathology.

Timothy Lalk (Lalk), a vocational rehabilitation counselor, evaluated Claimant on December 7, 2010. Lalk testified that based upon the opinions of Volarich and Stillings and Claimant's symptoms and limitations, Claimant would not be employable in the open labor market. Lalk stated that based on Claimant's described symptoms and Volarich's restrictions it would be difficult for her to perform activities at even a sedentary level and that "in addition to these physical limitations, she's been described as having a psychiatric condition with symptoms so severe that she could not be expected to function in any type of employment on a routine basis…and I do not believe any potential employer would consider her[.]" Lalk testified Claimant's assertions that "her life was fine before" the August 2005 injury were contrary to her psychiatric records. Lalk testified Claimant's pre-existing psychological conditions affected her employment and that Claimant's inability to be employable in the open labor market and to maintain employment is due to a combination of her pre-existing disabilities and the primary injury.

With respect to Volarich's opinion that Claimant was permanently totally disabled from the primary injury alone, Lalk stated, "I would defer to his remarks about her orthopedic impairments, but if he's saying something that contradicts the – the psychiatric findings or the opinions of those psychiatric evaluators, then I could not defer to him…I would have to defer…to the psychiatrist over to Dr. Volarich regarding her

psychiatric condition and the causes of the psychiatric disability." Lalk opined that Claimant's low back condition does not preclude her from all types of employment and noted that Volarich's report does not *require* Claimant to lie in a recumbent fashion, just to change positions frequently to maximize comfort and rest when needed.

Karen Kane-Thaler (Kane-Thaler), a vocational consultant, met with Claimant on March 24, 2011. Kane-Thaler testified that Volarich and Robson's physical restrictions allow for sedentary to light duty work and do not prevent Claimant from returning to the work force. However, the addition of the psychiatric restrictions and diagnoses as documented by Bassett and Stillings prevent Claimant from accessing jobs in the open labor market. Kane-Thaler testified Claimant's pre-existing psychiatric conditions impacted her ability to maintain employment prior to the primary injury and the combination of Claimant's pre-existing psychiatric conditions and the effects of the primary injury renders Claimant unemployable. Kane-Thaler testified that a claimant who must lie down during the day to relieve or to control pain symptoms would not necessarily be precluded from obtaining any type of employment. With regard to Volarich's opinion, Kane-Thaler testified that she would defer to Volarich's medical opinion as to whether the physical aspect of Claimant's injury would render her permanently totally disabled.

Thus, a review of the evidence clearly indicates that Volarich's opinions and conclusions, including his testimony as to Claimant's physical and psychiatric disabilities, were not uncontradicted and unimpeached. In fact, the overwhelming weight of the evidence presented contradicted Volarich's opinion as to Claimant's psychiatric disability. Volarich provided almost no support for his conclusions about Claimant's

10

psychiatric disability, indicating he did not perform any psychiatric evaluation on Claimant other than to note her mental status; he did not hold himself out as a psychiatric expert; and he did not diagnose Claimant with any psychiatric disorder as a result of the August 2005 accident. Volarich also repeatedly stated that *he would defer* to a psychiatrist's evaluation and assessment of those conditions.

Bassett and Stillings, both specialists in psychiatry, testified at length to Claimant's pre-existing psychiatric conditions and the psychiatric effect of the primary injury. The fact that these doctors did not provide an opinion as to Claimant's physical impairments does not render their conclusions as to Claimant's psychiatric conditions less relevant. Furthermore, both vocational experts testified that while they would defer to Volarich's expert medical opinion regarding Claimant's physical disability, they found that Claimant's PTD was the result of a combination of her pre-existing psychiatric conditions and the effects of the primary injury.

In its decision, the Commission specifically set forth Stillings's and Bassett's findings regarding Claimant's psychiatric disability resulting from the primary injury and Volarich's and Robson's findings as to Claimant's physical disability resulting from the primary injury. The Commission then went on to find that Claimant's suffered an 85 percent PPD of the body as a whole from the primary injury for her physical and psychiatric conditions. The Commission also explicitly stated it found the opinions of Lalk, Kane-Thaler, and Bassett persuasive with respect to the cause of Claimant's PTD. On the face of the decision, it is clear the Commission fulfilled its duty of assessing the credibility of the witnesses and weighing the evidence in making a determination.

11

The SIF's argument presumes that in assessing whether a claimant is permanently totally disabled as a result of a work-related injury, the Commission may only rely on the opinions and conclusions of experts that attempt to address the entirety of this question and may not rely on any evidence that speaks to only part of it. However, this simply is not required, and the case *sub judice* perfectly illustrates why the SIF's point must fail. Here, Claimant has both physical and psychiatric disabilities which impair her ability to compete in the open labor market. With the exception of Volarich, all of the medical experts in this case confined their opinions and conclusions to their area of expertise, be it orthopedics or psychiatry. Although Volarich provided an opinion as to both Claimant's physical and psychiatric disabilities, he also qualified that he would defer to a psychiatrist on the assessment of Claimant's psychiatric conditions. In recognition of the common practice of specialized medicine, the Commission can and must be able to accept an expert's testimony in his area of expertise and then assess and weigh the collective evidence when making its determination.

The Commission's determination that Claimant sustained an 85 percent PPD of the body as a whole as a result of the primary injury and that the SIF was liable for PTD benefits because Claimant was permanently totally disabled due to a combination of her pre-existing psychiatric disability and the effects of the primary injury was supported by sufficient competent evidence in the record.

Based on the foregoing, the SIF's point on appeal is denied.

Conclusion

The decision of the Commission is affirmed.

_____
Sherri B. Sullivan, J.

Lawrence E. Mooney, P.J., and
Robert G. Dowd, Jr., J., concur.

13