

# In the Missouri Court of Appeals
## Eastern District
DIVISION ONE

| | | |
|---|---|---|
| SHELBY PATTERSON, | ) | NO. ED101451 |
| | ) | |
| Respondent, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Appeal from the Labor and Industrial |
| | ) | Relations Commission |
| CENTRAL FREIGHT LINES, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TREASURER OF THE STATE OF | ) | |
| MISSOURI, AS CUSTODIAN OF | ) | |
| THE SECOND INJURY FUND, | ) | |
| | ) | |
| Appellant. | ) | FILED:  January 20, 2015 |

## OPINION

The Missouri State Treasurer, as custodian of the Second Injury Fund, appeals the decision of the Labor and Industrial Relations Commission finding the Fund liable for permanent total disability benefits in favor of Shelby Patterson.  We affirm.

## Background

Mr. Patterson was employed as a truck driver for Central Freight Lines when, in November 2008, he slipped and fell and injured his lumbar spine while cleaning an oil spill in his employer's warehouse. He filed this claim for workers compensation benefits stemming from that injury. In March 2009, Patterson underwent spinal surgery, specifically an L3-4

decompressive laminectomy and discectomy. The procedure was successful, but Patterson continued to experience pain, incontinence, erectile dysfunction, and difficulty walking. Despite these ongoing symptoms, Patterson was deemed at maximum medical improvement (MMI) in January 2010.

Although Patterson had not previously been diagnosed with any psychological conditions, he had a difficult history: an absent alcoholic father, academic and behavioral problems, years in foster care and juvenile detention, a felony conviction, seven years in prison, and strained familial relationships. As a result of his injury, surgery, and persisting symptoms, he became depressed and was referred to a psychiatrist in August 2009. By the time of the disability hearing in July 2013, he was essentially a recluse, physically unable to "do much of anything for himself" and psychologically incapacitated by depression and anxiety. The voluminous expert testimony about his physical and psychiatric conditions can be summarized as follows.

*Medical Experts*

Dr. Cantrell, a physiatrist, conducted an independent medical examination (IME) of Patterson in June 2009 (three months post-operative) and became his treating physician the following month. It was Cantrell who declared MMI in January 2010. He assigned Patterson a permanent partial disability (PPD) rating of 30% of the body as a whole (BAW) and released him for sedentary work. Subsequently, Cantrell reviewed additional records revealing a history of back pain and degenerative changes pre-dating Patterson's work injury, causing Cantrell to revise his PPD rating attributable to the work injury to 10%. In late 2010, Cantrell released Patterson for work with a 50-pound lifting restriction.

Several of the experts noted that Patterson seemed to exaggerate his symptoms. Dr. Graham, a pain management specialist, opined that Patterson's physical complaints could not be explained by his disc surgery and suspected that his psychiatric diagnosis (described below) "may be a major cause of his subjective complaints." Dr. Peeples, a neurologist, also opined that Patterson's complaints could not be explained by his work injury or disc surgery and suspected psychiatric dysfunction as the prevailing cause of his disability.

Dr. Poetz performed an IME in January 2011 and rated Patterson's various disabilities (all PPD/BAW) as follows: 5% for his pre-existing lumbar condition, 40% for the work-related injury to the lumbar spine, 20% for depression and anxiety, 20% for urinary incontinence, and 10% for erectile dysfunction. Poetz opined that all but the pre-existing lumbar condition (5%) were attributable to the work injury and together rendered Patterson permanently and totally disabled (PTD).

*Psychiatric*

Dr. Bassett, Patterson's treating psychiatrist, diagnosed Patterson with "depression with psychotic features" and prescribed psychiatric pharmaceuticals. As Patterson's treating psychiatrist and fiduciary, Bassett declined to provide a formal opinion as to the cause of Patterson's condition. But he opined clinically that Patterson's symptoms were severe enough to hinder employment, particularly when combined with the embarrassment of incontinence. Bassett expressed concern that Patterson would "psychiatrically decompensate" in a work setting.

Dr. Stillings, also a psychiatrist, conducted an IME in July 2010. He diagnosed Patterson with several pre-existing psychiatric conditions stemming from his difficult personal history and assigned a corresponding aggregate pre-existing psychiatric PPD of 32.5% BAW. Stillings then

3

opined that Patterson's work injury added another 5% PPD/BAW to his psychiatric disability. Stillings explained that Patterson's tendency to exaggerate his symptoms was consistent with his psychiatric profile. He rated Patterson's Global Assessment of Functioning at 65/100 and concluded that Patterson has a limited ability to maintain employment due to psychiatric conditions.

Dr. Liss conducted an IME in July 2012 and diagnosed Patterson with clinical depression. He opined that the psychiatric disability and the work injury each alone could result in PTD and that the combination of the two is even greater. However, noting that Patterson was employed and psychologically functional prior to the work injury, Liss concluded that the entirety of his PTD was attributable to the work injury.

*Vocational*

Vocational expert Bob Hammond opined that Patterson is employable but unmotivated. Vocational expert James England opined that Patterson is PTD as a result of the combination of his physical limitations and psychiatric issues.

*Administrative Findings*

Both the administrative law judge (ALJ) and the Commission found Stillings's opinion highly persuasive. The ALJ found that Patterson had a pre-existing psychiatric PPD of 10% that was aggravated another 5% by the work injury. With regard to Patterson's lumbar condition, the ALJ found that Patterson had a pre-existing PPD of 5% and sustained a PPD of 40% as a result of the work injury. As relevant to this appeal, the ALJ concluded that the combination of Patterson's work injury PPDs (40% lumbar and 5% psychiatric) and pre-existing PPDs (5% lumbar and 10% psychiatric) was insufficient to reach PTD and thus trigger Fund liability.

4

The Commission partially adopted and partially modified the ALJ's award. The Commission agreed that Patterson suffered a PPD of 45% from his work injury.[1] That finding is not challenged on appeal. However, the Commission gave even greater weight to Stillings's opinion and rated Patterson's pre-existing psychiatric PPD at 30%. Combining the two, the Commission concluded that Patterson was PTD, so the Fund was liable for PTD benefits. The Treasurer appeals, asserting that the Commission erred by supplanting the expert testimony with its own lay opinion as to the cause of Patterson's psychiatric disability and PTD.

**Standard of Review**

Our standard of review is set forth in §287.495.1.  An appellate court shall only review questions of law and may modify, reverse, remand or set aside an award only if the Commission acted without or in excess of its powers, the award was procured by fraud, the facts found by the Commission do not support the award, or there was not sufficient competent evidence in the record to warrant the making of the award.   Id.  In the absence of fraud, the findings of fact made by the Commission within its powers shall be conclusive and binding.  Id.

This court will uphold the Commission's award if it is supported by competent and substantial evidence and is not contrary to the overwhelming weight of the evidence.  Hampton v. Big Boy Steel Erection, 121 S.W.3d 220, 223 (Mo. 2003).   The Commission, as the finder of fact, is free to believe or disbelieve any evidence. Molder v. Missouri State Treasurer, 342 S.W.3d 406, 409 (Mo. App. W.D. 2011).  We defer to the Commission's findings as to weight and credibility of testimony and are bound by its factual determinations.  Id.  The Commission need not defer to ALJ findings but is authorized to reach its own decisions.  Id. We review the findings of the Commission and not those of the ALJ.  Id. at 410.  However, this court reviews

---

[1] Although the ALJ assigned 40% PPD to the lumbar injury alone, the Commission included Patterson's incontinence in that same figure, thus awarding coverage for future medical treatment for that condition.

5

questions of law independently and is not bound by the Commission's conclusions of law or its application of the law to the facts. Grubbs v. Treasurer of Missouri as Custodian of Second Injury Fund, 298 S.W.3d 907, 910 (Mo. App. E.D. 2009).

**Discussion**

The determination of whether a claimant is PTD is based upon the claimant's ability to compete in the open labor market. Blackshear v. Adecco, 420 S.W.3d 678, 681 (Mo. App. E.D. 2014). The primary determination is whether an employer can reasonably be expected to hire the employee, given his present physical condition, and reasonably expect the employee to successfully perform the work. Id.

A claimant's entitlement to disability compensation from the Fund is governed by §287.220.2. A claimant must prove either (1) that he is PTD due to the combination of his present compensable injury and his pre-existing partial disability or (2) that the combination of his present compensable injury and his pre-existing PPDs create a greater overall disability than the sum of the disabilities independently. Blackshear, 420 S.W.3d at 681. In deciding whether the Fund has any liability, the first determination is the degree of disability from the last injury. Id. If the claimant's last injury alone rendered him PTD, then pre-existing disabilities are irrelevant, the Fund has no liability, and the employer is responsible for the entire amount. Id. If the claimant's last injury alone does not render him PTD, then, to obtain compensation from the Fund, the claimant must show that he suffers from a pre-existing PPD of such seriousness as to constitute a hindrance or obstacle to employment. §287.220.2. The focus of the inquiry is not on the extent to which the condition caused difficulty in the past but on the potential that it could combine with a work injury to cause a greater degree of disability than would have resulted without it. Knisley v. Charleswood Corp., 211 S.W.3d 629, 637 (Mo. App. E.D. 2007). As an

6

evidentiary matter, PPD and PTD must be "demonstrated and certified by a physician." §287.190.6(2).

Reviewing the relevant evidence here, Dr. Poetz allocated PPD ratings for each of Patterson's symptoms, both physical (75% in the aggregate) and psychiatric (20%), and opined that Patterson was PTD from the work injury alone. Dr. Liss did not assign numerical ratings but opined that Patterson was PTD physically and PTD psychiatrically (both independently) as a result of the work injury alone. Dr. Stillings rated Patterson's pre-existing psychiatric PPD at 32.5% and added another 5% psychiatric PPD from the work injury. Both the ALJ and the Commission found Stillings's opinion highly persuasive. Additionally, although they didn't specifically certify PPD or PTD, Drs. Graham and Peeples indicated that Patterson's physical symptoms could not be explained medically and were likely attributable to psychiatric dysfunction, and Dr. Bassett cautioned that Patterson would "psychologically decompensate" in a work setting.

Following §287.220.2, the Commission first determined the degree of disability from the last injury alone and assigned a rating of 45% PPD/BAW. The Commission found unpersuasive Drs. Poetz's and Liss's opinions attributing the entirety of Patterson's PTD to the work injury. Rather, relying on Stillings's opinion, the Commission found that Patterson's psychiatric PPD was pre-existing at a rating of 30% BAW. Reasoning that this pre-existing condition was serious enough to constitute an obstacle to employment because it could combine with a future work injury to result in a worse disability than would have resulted without it, the Commission concluded that the combination of Patterson's work injury PPD and pre-existing psychiatric PPD rendered him PTD and thus entitled to compensation from the Fund.

7

In its sole point, the Treasurer asserts that the Commission erred as a matter of law by substituting its own opinion on medical causation in place of the expert testimony. More specifically, the Treasurer submits that the Commission violated §287.190.6(2), requiring that PTD be certified by a physician, because no expert specifically opined that Patterson's PTD resulted from a *combination* of his work injury and pre-existing psychiatric problems. Rather, the Commission extrapolated its conclusion from select opinions by several experts. Although raised in a single point, the Treasurer's challenge is two-tiered: (1) whether, as a matter of law, a finding of PTD triggering Fund liability requires expert certification as to the combination of work injury and pre-existing psychiatric condition and, inextricably, (2) whether the Commission's finding is supported by sufficient competent evidence.

In support of its position, the Treasurer cites Angus v. Second Injury Fund, 328 S.W.3d 294 (Mo. App. W.D. 2010), Wright v. Sports Associated, Inc., 887 S.W.2d 596 (Mo. 1994), and Abt v. Mississippi Lime Co., 388 S.W.3d 571 (Mo. App. E.D. 2012). In Angus, the sole testifying medical expert certified that the claimant's PTD resulted from a combination of his pre-existing rheumatoid arthritis and work-related degenerative osteoarthritis, and the record contained written reports of two other doctors who arrived at the same conclusion. The Commission disregarded this uncontradicted medical evidence and concluded that the claimant's PTD was a result of his pre-existing rheumatoid arthritis alone. The appellate court reversed in that the Commission's award was not supported by the evidence and was against the overwhelming weight of the evidence. In Wright, the uncontradicted medical evidence indicated that the claimant's neck injury was work-related, but the ALJ rejected that evidence based on his own personal knowledge and experience as an ALJ. The Supreme Court of Missouri reversed in that the award was not supported by sufficient competent evidence. In Abt, the claimant offered

8

expert testimony that his PTD resulted from a combination of his work injury and a pre-existing condition, while the employer offered expert testimony that his PTD was caused by the pre-existing condition alone. The Commission found that the claimant's PTD was due to subsequent deterioration of his pre-existing condition and not attributable to work. This court reversed because the Commission's theory wasn't articulated by any of the experts.

We are not persuaded that the foregoing authorities mandate reversal here. None hold as a matter of law that §287.190.6(2) requires the Commission's causation allocation to be physician-certified, as the Treasurer insists. The statute (which §287.800 directs us to strictly construe) only requires PPD and PTD *status* to be physician-certified, which they were. The Commission did not violate §287.190.6(2) as a matter of law. The standard for causation is in §287.020 and simply requires that the work accident be the "prevailing factor" in the resulting medical condition and disability. Causation is a question of fact to be determined by the Commission. Henley v. Fair Grove R-10 School Dist., 253 S.W.3d 115, 131 (Mo. App. S.D. 2008). The Treasurer does not appeal the Commission's finding that Patterson's work injury caused his *physical* PPD of 40% BAW. The Treasurer only challenges the Commission's finding as to the cause of Patterson's psychiatric PPD and consequent determination of Fund liability. Dr. Stillings opined that Patterson had a *pre-existing* psychiatric PPD of 32.5% that was aggravated another 5% from the work injury, but Dr. Liss found no pre-existing psychiatric PPD and deemed Patterson psychiatrically PTD as a result of the work injury alone.

Although framed to invoke *de novo* review, the substance of the Treasurer's argument attacks the sufficiency of the evidence supporting the Commission's award. The above cases were decided under that standard but do not direct reversal on the present record. We find superior authority in Blackshear v. Adecco, 420 S.W.3d 678 (Mo. App. E.D. 2014). There, as

9

here, the claimant had a combination of physical and psychiatric disabilities, and the record contained conflicting evidence by medical, psychiatric, and vocational experts as to the significance of each. The Commission found the claimant PTD from the combination of her work injury and pre-existing psychiatric condition despite opinions to the contrary, and this court affirmed. The court's reasoning is highly instructive.

> The SIF's argument presumes that, in assessing whether a claimant is permanently totally disabled as a result of a work-related injury, the Commission may only rely on the opinions and conclusions of experts who attempt to address the entirety of this question and may not rely on any evidence that speaks to only part of it. However, this simply is not required, and the case *sub judice* perfectly illustrates why the SIF's point must fail. Here, Claimant has both physical and psychiatric disabilities that impair her ability to compete in the open labor market. With the exception of Volarich, all of the medical experts in this case confined their opinions and conclusions to their area of expertise, be it orthopedics or psychiatry. Although Volarich provided an opinion as to both Claimant's physical and psychiatric disabilities, he also qualified that he would defer to a psychiatrist on the assessment of Claimant's psychiatric conditions. *In recognition of the common practice of specialized medicine, the Commission can and must be able to accept an expert's testimony in his area of expertise and then assess and weigh the collective evidence when making its determination.*

Blackshear, 420 S.W.3d at 684-85. (emphasis added)  Thus, the record need not contain a single expert opinion addressing the entirety of a claimant's conditions. Rather, the Commission may consider the opinions of multiple experts of differing specialties to arrive at its factual determination as to the parts and sum of a claimant's conditions.

The Treasurer attempts to distinguish Blackshear in that, there, the Commission's finding was consistent with some experts' opinions of combined causation (within their specialties) whereas, here, no expert opinion precisely matches the Commission's allocation. But this distinction misses the point and ignores our standard of review, the rationale for which is sharply apparent here.  It is not the role of this court to dissect and appraise expert evidence concerning the origins and significance of a claimant's conditions. Acceptance or rejection of medical evidence is for the Commission. Houston v. Roadway Express, Inc, 133 S.W.3d 173, 179

(Mo.App. 2004). We shall not substitute our judgment for that of the Commission on issues of fact. Molder, 342 S.W.3d at 410. The Commission can consider all of the evidence in determining the amount of an employee's PPD and is not obligated to award the same percentages assigned by experts. Buskuehl v. The Doe Run Co., 68 S.W.3d 535, 540 (Mo. App. E.D. 2001), and Landers v. Chrysler Corp., 963 S.W.2d 275, 284 (Mo. App. E.D. 1997) (both overruled on other grounds by Hampton v. Big Boy Steel Erection, 121 S.W.3d 220 (Mo. 2003)). It is within the province of the Commission to determine what weight it will accord expert testimony on medical causation. Where the right to compensation depends on conflicting medical theories, the issue is "peculiarly for the Commission's determination." Landers at 282. And, ultimately, the employability of an individual is a technical matter within the Commission's expertise. Carkeek v. Treasurer of the State of Missouri as Custodian of the Second Injury Fund, 352 S.W.3d 604, 610 (Mo. App. W.D. 2011).

The Commission was free to accept expert opinions that Patterson was PTD but also free to disbelieve that Patterson's psychiatric PPD was a result of the work injury. The Commission's determination that Patterson's psychiatric PPD was *pre-existing* at 30% BAW is supported by Dr. Stilling's opinion. The Commission's finding that Patterson is unemployable due to the compounding of his pre-existing psychiatric PPD and work-related PPD is supported by sufficient competent evidence.

### Conclusion

The Commission's decision awarding Patterson PTD benefits from the Second Injury Fund is affirmed.

_____
CLIFFORD H. AHRENS, Judge

Lawrence E. Mooney, P.J., and Lisa Van Amburg, J., concur.

11