

# In the
# Missouri Court of Appeals
## Western District

TREASURER OF THE STATE OF )
MISSOURI - CUSTODIAN OF )
THE SECOND INJURY FUND, )
         )
        **Appellant,** )    **WD86684**
         )    **OPINION FILED:**
    **v.** )    **JUNE 11, 2024**
         )
DIANA PENNEY, )
         )
        **Respondent.** )

**Appeal from Labor and Industrial Relations Commission**

**Before Division One: Lisa White Hardwick, Presiding Judge, Alok Ahuja, Judge, and Anthony Rex Gabbert, Judge**

The Treasurer of the State of Missouri-Custodian of the Second Injury Fund ("Fund") appeals the award of permanent total disability benefits in connection with Diana Penney's March 8, 2019 claim, contending the Labor and Industrial Relations Commission ("Commission") misapplied Section 287.220.3(2)(a)a(ii)[1] by failing to strictly construe the statute when allowing preexisting compensable occupational diseases to satisfy category two, arguing that the plain text of category two excludes compensable

---

[1]All statutory references are to the Revised Statutes of Missouri, as updated through 2018, unless otherwise noted.

occupational diseases by referencing Section 287.020, which outlines the compensability standards for accidents, and not Section 287.067, which outlines the compensability standards for occupational diseases.  We affirm.

## Background and Procedural Information

The underlying facts are not in dispute as the issue on appeal is a question of statutory interpretation.  Diana Penney worked as a pharmacy technician from 1980 until August 2019.  Penney had three workers' compensation claims from three repetitive use diseases.  These were sustained by Penney in 2018 and 2019 while she worked for CVS Pharmacy in Kansas City.  As a pharmacy technician, Penney was required to extensively use her hands when giving out prescriptions, typing on the computer, getting money from the register, and screwing and unscrewing prescription bottle lids.

In March 2019, Penney was diagnosed with right carpal tunnel syndrome and ulnar nerve entrapment at the elbow on the left side.  Penney had right carpal tunnel surgery in October 2019.  She continues to have ongoing pain in both hands and they sometimes go to sleep.  She also has weakness in her hands and problems with grasping, gripping, and dropping things.  Penney filed a work-related occupational disease claim in relation to this injury on March 8, 2019.

Penney had a prior work-related occupational disease injury claim in June 2018 regarding her low back.  She had two surgeries that included multilevel decompression and fusion to her low back.  After her first surgery in October 2018, Penney returned to work part time working four hours per shift, three days per week.  Penney continues to

2

suffer issues with pain and weakness in her low back since the 2018 work injury.  The matter settled for 12 ½ % permanent partial disability of the body as a whole at the 400-week level under Missouri Workers' Compensation Law.

Penney also had a work-related occupational disease injury claim in February 2019 regarding her neck and upper back with protruding disks.  Penney declined surgical intervention due to poor results with her prior back surgeries.  She had unsuccessful epidural injections in her neck.  Penney testified that she was advised by doctors that her low back, neck, and upper back conditions were caused by the things she did at work.  Penney continues to suffer with pain and weakness in her neck, shoulders and upper extremities since this 2019 work injury.  The matter settled for 12 ½ % permanent partial disability of the body as a whole at the 400-week level.

Penney testified that she stopped working on August 30, 2019, and is unable to work due to pain from the combination of all three work-related claims that includes pain in her low back down her left leg, pain in her arms, neck, shoulders, headaches, pain and weakness in both hands, and difficulty sleeping.  Penney testified that she takes narcotic medication for pain and should not work or drive while on these medications.

Penney was evaluated by Dr. K. on October 22, 2020.  Dr. K. opined the work-related occupational disease injury with a claim date of March 8, 2019, resulted in disability involving the right and left upper extremity.  He further opined that Penney's employment as a pharmacy technician up through the March 8, 2019, occupational disease claim date represents the direct, proximate, and prevailing factor in her

3

development of right carpal tunnel syndrome that required surgery and left cubital tunnel syndrome that has been treated nonoperatively to date.

Dr. K. evaluated Penney's pre-existing industrial disabilities and opined both would qualify under the statute to trigger Fund liability. The first claim regards disability flowing from Penney's June 2018 injury where Penney suffered a separate, cumulative work-related occupational disease injury to her low back. Dr. K. opined that Penney's workplace activities, in terms of material handling tasks she performed, represent activities which were unique, in terms of extent, compared to her nonemployment activities, and Penney was not exposed to the same extent outside of work.

Dr. K. opined that Penney's permanent and total disability flows from the synergism of the global combination of the disabilities flowing from each of the primary occupational disease claims to the low back, cervicothoracic region, and both upper extremities. He further believed that the disability flowing from the June 21, 2018, occupational disease injury claim, and the February 4, 2019, occupational disease injury claim, would qualify under Section 287.220.3 to have the potential to trigger Fund liability. Dr. K. viewed the permanent total disability as arising from the impact of combining the qualifying preexistent disabilities under Section 287.220.3 with the additional disability attributable to the last primary occupational disease injury claim of March 8, 2019.

T.C., a vocational expert, opined that Penney is totally vocationally disabled due to her three occupational disease claims and the resulting restrictions. T.C. testified that,

4

when one considers the entirety of Dr. K.'s restrictions, in combination with Penney's advancing age, her education of only a high school degree and pharmacy technician certificate, her work background entirely as a pharmacy technician which she can no longer perform, her lack of skills other than pharmacy technician skills, and the significant restrictions that had been advised for the injuries of June 21, 2018, February 4, 2019, and March 8, 2019, Penney is totally vocationally disabled. T.C. additionally testified that no employer in the state of Missouri would realistically hire Penney, and believed Penney to be vocationally totally disabled as a result of the combination of her injuries to the low back, cervical spine, and bilateral upper extremities.

The parties presented the matter to the Division of Workers' Compensation to determine whether the Fund is liable to Penney for any compensation. An Administrative Law Judge ("ALJ") found Dr. K.'s and T.C.'s opinions unrefuted and credible, and concluded that Penney is permanently and totally disabled as a result of the combined effect of her disabilities and entitled to permanent total disability benefits from the Fund.

The Fund applied to the Commission for review of the ALJ's decision, arguing the ALJ improperly applied Section 287.220.3(2)a(a) when it interpreted Section 287.220.3(2)a(a)(ii) to include Penney's occupational diseases. The Commission disagreed and affirmed the ALJ's award and decision, incorporating the ALJ's decision to the extent not inconsistent with the Commission's supplemental decision.

This appeal follows.

## Standard of Review

"The Commission's decision must be 'supported by competent and substantial evidence upon the whole record.'" *Weibrecht v. Treasurer of Missouri*, 659 S.W.3d 588, 592 (Mo. banc 2023) (quoting Mo. Const. art. V, sec. 18). On appeal, the Commission's factual findings are conclusive and binding in the absence of fraud. *Id.* (citing Section 287.495.1). We defer to the Commission's determinations regarding the credibility of witnesses and weight of the evidence. *Id.* On appeal, we only review questions of law and may modify, reverse, remand for rehearing, or set aside the award on only four grounds: 1) The Commission acted without or in excess of its powers; 2) The award was procured by fraud; 3) The facts found by the Commission do not support the award; 4) There was not sufficient competent evidence in the record to warrant the making of the award. *Id.* (citing Section 287.495.1(1)-(4)).

The provisions of Missouri Workers' Compensation Law are to be strictly construed. § 287.800.1. "Questions of law, including those involving statutory interpretation, are reviewed *de novo*." *Accident Fund Ins. Co. v. Casey*, 550 S.W.3d 76, 79 (Mo. banc 2018). We review questions of law independently and are not bound by the Commission's conclusions of law or its application of the law to the facts. *Patterson v. Cent. Freight Lines*, 452 S.W.3d 759, 764 (Mo. App. 2015).

## Point on Appeal

In its sole point on appeal, the Fund contends the Commission misapplied Section 287.220.3(2)(a)a(ii), by failing to strictly construe the statute when allowing preexisting

6

compensable occupational diseases to satisfy category two, arguing that the plain text of category two excludes compensable occupational diseases by referencing Section 287.020, which outlines the compensability standards for accidents, and not Section 287.067, which outlines the compensability standards for occupational diseases.

To trigger Fund liability for claims occurring after January 1, 2014, the following conditions need to be met:

a. An employee has a medically documented preexisting disability equaling a minimum of fifty weeks of permanent partial disability compensation according to the medical standards that are used in determining such compensation which is:

    (i)    A direct result of active military duty in any branch of the United States Armed Forces; or

    (ii)    **A direct result of a compensable injury as defined in section 287.020**; or

    (iii)    Not a compensable injury, but such preexisting disability directly and significantly aggravates or accelerates the subsequent work-related injury and shall not include preexisting injuries or conditions that do not aggravate or accelerate the subsequent work-related injury; or

    (iv)    A preexisting permanent partial disability of an extremity, loss of eyesight in one eye, or loss of hearing in one ear, when there is a subsequent compensable work-related injury as set forth in subparagraph b of the opposite extremity, loss of eyesight in the other eye, or loss of hearing in the other ear; and

b. Such employee thereafter sustains a subsequent compensable work-related injury that, when combined with the preexisting disability, as set forth in items (i), (ii), (iii), or (iv) of subparagraph a. of this paragraph, results in a permanent total disability as defined under this chapter…

§ 287.220.3(2)(a) (Emphasis added).

7

Penney's claim involved Section 287.220.3(2)(a)a(ii), highlighted above, in that it was alleged to be based on a preexisting disability that was a direct result of a compensable injury as defined in Section 287.020. Section 287.020.3 states:

(1) In this chapter the term **'injury'** is hereby defined to be an injury which has arisen out of and in the course of employment. An injury by accident is compensable only if the accident was the prevailing factor in causing both the resulting medical condition and disability. **'The prevailing factor'** is defined to be the primary factor, in relation to any other factor, causing both the resulting medical condition and disability.

(2) An injury shall be deemed to arise out of and in the course of the employment only if:

   (a) It is reasonably apparent, upon consideration of all the circumstances, that the accident is the prevailing factor in causing the injury; and

   (b) It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life.

(3) An injury resulting directly or indirectly from idiopathic causes is not compensable.

(4) A cardiovascular, pulmonary, respiratory, or other disease, or cerebrovascular accident or myocardial infarction suffered by a worker is an injury only if the accident is the prevailing factor in causing the resulting medical condition.

(5) The terms **'injury'** and **'personal injuries'** shall mean violence to the physical structure of the body and to the personal property which is used to make up the physical structure of the body, such as artificial dentures, artificial limbs, glass eyes, eyeglasses, and other prostheses which are placed in or on the body to replace the physical structure and such disease or infection as naturally results therefrom. These terms shall in

8

> no case except as specifically provided in this chapter be construed to include occupational disease in any form, nor shall they be construed to include any contagious or infectious disease contracted during the course of employment, nor shall they include death due to natural causes occurring while the worker is at work.

§ 287.020.3 (Emphases original).

The Fund argues that the phrase, "These terms shall in no case except as specifically provided in this chapter be construed to include occupational disease in any form…," found above in Section 287.020.3(5), means that the legislature intended for *all* occupational disease to be excluded from Section 287.020.3(a)a(ii). We disagree. The Fund correctly notes that a long-established rule of statutory interpretation is that the legislature intended every word and clause of a statute, citing *Hyde Park Housing P'ship v. Dir. of Revenue*, 850 S.W.2d 82, 84 (Mo. banc 1993), but fails to explain the "except as specifically provided in this chapter" language within Section 287.020.3(5). "Workers' compensation law is entirely a creature of statute, and when interpreting the law the court must ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms and give effect to that intent if possible." *Templemire v. W & M Welding, Inc.*, 433 S.W.3d 371, 381 (Mo. banc 2014).

By specifying that the terms "injury" and "physical injuries" "shall [not] … be construed to include occupational disease" unless "specifically provided in this chapter," Section 287.020.3(5) makes clear that, *if* chapter 287 "specifically provide[s]," then occupational disease claims *do* fall within the terms "injury" and "physical injuries" as

9

defined in Section 287.020.3.  Section 287.020 is within Chapter 287 and is the

"Definitions" section for Chapter 287.  The word "chapter" within the phrase, "except as

specifically provided in this chapter," therefore, references Chapter 287.  Chapter 287

includes Section 287.067.  Section 287.067 defines "occupational disease" and the

requirements for when an "injury or death by occupational disease is compensable."  §

287.067.2.  Moreover, an occupational disease defined as compensable in Section

287.067 is a "compensable injury" under Section 287.220.3(2)(a)a(ii) because it is

"specifically provided in" Chapter 287 as compensable.

A similar argument was made by the Fund in *Peters v. Treasurer*, 404 S.W.3d 322

(Mo. App. 2012), wherein the Fund argued that the Fund was only liable in the case of an

"injury," and when strictly construed, the term "injury" did not encompass an

occupational disease in Section 287.220.3(2)(b), which requires a "subsequent

compensable work-related injury" for Fund liability.  The *Peters* court disagreed stating:

> Section 287.020.3 defines the terms 'injury' and 'personal injuries'
> to 'mean violence to the physical structure of the body…."  Mo.Rev.Stat. §
> 287.020.3(5).  The statute further provides: 'These terms shall in no case
> except as specifically provided in this chapter be construed to include
> occupational disease in any form…."  *Id*.  Section 287.067 specifically
> provides for an injury by occupational disease.  Mo.Rev.Stat. § 287.067;
> *Treasurer of State v. Stiers*, 388 S.W.3d 217, 219-20 (Mo. App. W.D. 2012).
> Section 287.067 defines the term 'occupational disease' to mean 'an
> identifiable disease arising with or without human fault out of and in the
> course of the employment' and states that '[a]n injury by occupational
> disease is compensable only if the occupational exposure was the prevailing
> factor in causing both the resulting medical condition and disability.'
> Mo.Rev.Stat. § 287.067.1.2.  The statute also provides: 'An injury due to
> repetitive motion is recognized as an occupational disease for purposes of
> this chapter.'  Mo.Rev.Stat. § 287.067.3.  Because the statute specifically

10

recognizes occupational diseases as compensable injuries, we conclude that an occupational disease constitutes 'a subsequent compensable injury' for purposes of triggering Fund liability under Section 287.220.1. *Stiers*, 388 S.W.3d at 219.

404 S.W.3d at 324-325. Although *Peters* was decided before the enactment of what is now Section 287.220.3(2)(a)a(ii), it interpreted the same language in Section 287.020.3 on which the Fund now relies, and explicitly rejected the Fund's argument that injuries by occupational disease could not be considered "injuries" within the meaning of Section 287.020.3.

*Peters* went on to discuss that, "the courts have long recognized that the Fund is liable for payment of benefits when a claimant's workplace occupational disease combines with a preexisting disability to cause a greater disability than the occupational disease alone would have caused." 404 S.W.3d at 325. With regard to the 2005 legislative amendments, the court noted: "Significantly, the Legislature did not amend Sections 287.020.3(5) or 287.220.1 to limit the Fund's liability to injuries by accident and exclude coverage for injuries by occupational disease." *Id.*

The Commission did not misapply Section 287.220.3(2)(a)a(ii) or fail to strictly construe the statute when allowing preexisting compensable occupational diseases to satisfy category two, in that Section 287.020's definition of "injury" encompasses occupational diseases provided for in Chapter 287, and Section 287.067 of Chapter 287 defines compensable occupational diseases.

The Fund's point on appeal is denied.

11

**Conclusion**

The Commission's award is affirmed.

_____
Anthony Rex Gabbert, Judge


All concur.

12