Standard of Review
On appeal, we review the Commission's decision to ensure it is "supported by competent and substantial evidence." White v. ConAgra Packaged Foods, LLC , 535 S.W.3d 336, 338 (Mo. banc 2017) (quoting Mo. Const. art. V, § 18 ).
The Commission's decision will ... be disturbed [only] if: (1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award.
Id. We "will affirm the Commission's decision if [we] determine[ ] that the Commission could have 'reasonably made its findings, and reached its result, upon consideration of all the evidence before it.' " Treasurer of State of Mo. v. Majors , 506 S.W.3d 348, 352 (Mo. App. W.D. 2016) (quoting Hornbeck v. Spectra Painting, Inc. , 370 S.W.3d 624, 629 (Mo. banc 2012) ).
"Where a Commission's decision is based on its interpretation and application of the law, we review the Commission's conclusions of law and its decision de novo." Id. ; see also White , 535 S.W.3d at 338 ("Decisions involving statutory interpretation ... are reviewed de novo. "). "However, we defer to the Commission's factual findings on issues such as the credibility of witnesses and the weight given to their testimony." Majors , 506 S.W.3d at 352. "This includes the Commission's evaluation of expert medical testimony." Id. (quoting Pruett v. Fed. Mogul Corp. , 365 S.W.3d 296, 304 (Mo. App. S.D. 2012) ).
Analysis
In its sole point on appeal, the Fund argues that the Commission erred as a matter of law in awarding Moss permanent and total disability benefits because a physician did not demonstrate and certify permanent total disability as required by § 287.190.6(2).
"Permanent partial disability or permanent total disability shall be demonstrated *116 and certified by a physician." § 287.190.6(2); see also Patterson v. Cent. Freight Lines , 452 S.W.3d 759, 765 (Mo. App. E.D. 2015) ("As an evidentiary matter, PPD and PTD must be 'demonstrated and certified by a physician.' " (quoting § 287.190.6(2))). Here, the issue is permanent total disability. "Under Section 287.020 RSMo., the term 'total disability' is defined as the 'inability to return to any employment and not merely ... inability to return to the employment in which the employee was engaged at the time of accident.' " Majors , 506 S.W.3d at 353 (quoting Scott v. Treasurer of State-Custodian of Second Injury Fund , 417 S.W.3d 381, 386 (Mo. App. W.D. 2014) ). "The well-established test for determining permanent total disability is 'whether the worker is able to compete in the open labor market.' " Id. (quoting Scott , 417 S.W.3d at 387 ). "The ability to compete in the open labor market hinges on whether, in the ordinary course of business, any employer would be reasonably expected to hire the individual given his or her present physical condition." Id. at 353-54 (quoting Scott , 417 S.W.3d at 387 ). Thus, determining permanent total disability requires medical evidence of the employee's present physical condition and anticipated work restrictions, as well as evidence of the current labor market, which a physician may not be able to provide. "It has been well established that the 'degree of disability is not solely a medical question.' " Id. at 354 (quoting ABB Power T&D Co. v. Kempker , 236 S.W.3d 43, 51 (Mo. App. W.D. 2007) ).
The terms "demonstrated" and "certified" as used in § 287.190.6(2) are not defined in Missouri's workers' compensation law. In the absence of statutory definitions, we look to the dictionary to determine the plain and ordinary meaning of terms. Mantia v. Mo. Dep't of Transp. , 529 S.W.3d 804, 809 (Mo. banc 2017). The term "certify" means "to attest as being true or as meeting certain criteria." Certify , Black's Law Dictionary (10th ed. 2014). And "demonstrate" means "to show clearly ... to prove or make clear by reasoning or evidence ... to illustrate and explain especially with many examples." Merriam-Webster Online Dictionary, available at https://www.merriam-webster.com/dictionary (last accessed November 1, 2018).
Consistent with the definition of "total disability," we interpret § 287.190.6(2)'s mandate that permanent total disability "be demonstrated and certified by a physician" to require that a physician show clearly and attest as being true the employee's medical condition and resulting work-related restrictions post injury. Once a physician does that, the requirement of § 287.190.6(2) is satisfied, and it is within the Commission's expertise to determine whether the employee, with the medical conditions and physical limitations confirmed by the physician, is employable. See Patterson , 452 S.W.3d at 767 ("[U]ltimately, the employability of an individual is a technical matter within the Commission's expertise.").
We recently addressed the requirement of § 287.190.6(2) in Majors . There, we affirmed an award where the Commission relied on both medical evidence and non-physician vocational expert evidence in considering whether a permanent and total disability existed. Majors , 506 S.W.3d at 354-55. The testifying physician in Majors determined that "Majors [a street sweeper] was physically unable to perform many physical tasks required in manual labor such as, but not limited to, bending his knees, squatting below parallel, twisting his knees, and standing for long periods of time." Id. at 351. The physician did not state that Majors was "permanently and totally disabled," but Terry Cordray, the *117 rehabilitation counselor retained by Moss's employer in the present case, concluded that, "due to Majors'[s] education level, physical work limitations, and limited work experience, ... [he wa]s unable to compete for work in the open labor market as a result of the primary right knee injury combined with the pre-existing left knee conditions." Id.
The Fund appealed, arguing that the Commission should not have relied on Cordray's opinion in determining whether Majors was permanently and totally disabled. Id. In rejecting the Fund's argument, we held that "[t]he record need not contain a single expert opinion addressing the entirety of a claimant's conditions. Rather, the Commission may consider the opinions of multiple experts of differing specialties to arrive at its factual determination as to the parts and sum of a claimant's conditions." Id. at 354 (quoting Patterson , 452 S.W.3d at 767 ). "[I]n a workers' compensation case, even '[t]he testimony of the claimant or other lay witnesses as to facts within the realm of lay understanding can constitute substantial evidence of the nature, cause, and extent of the disability, especially when taken in connection with, or where supported by, some medical evidence.' " Id. (quoting ABB Power , 236 S.W.3d at 51 ). "It has been well established that the 'degree of disability is not solely a medical question.' " Id. (quoting ABB Power , 236 S.W.3d at 51 ). Thus, we conclude, as we did in Majors , that, in determining if the claimant is permanently and totally disabled, the Commission may rely on both evidence provided by a physician demonstrating and certifying the claimant's medical condition and functional abilities and evidence provided by other non-medical experts assessing whether, in light of his medical condition and functional ability, the claimant is employable.[4] We reject the Fund's contention that a finding of permanent and total disability can be made in only cases where the employee presents an opinion from a physician specifically stating that the employee is unable to perform any work.
We also reject the Fund's contention that Majors is distinguishable because here, unlike in Majors , the physician opined that the claimant could do sedentary work. After providing permanent partial disability ratings for Moss's primary injury and his pre-existing injuries, and concluding that the combination of injuries created an overall greater disability, Dr. Hopkins addressed Moss's ability to work in the future. The doctor advised that Moss would require a sedentary job where he could change positions as needed and would not have to lift more than ten pounds, raise his right arm above his shoulder, or bend repetitively at the waist, ultimately concluding that Moss has "very limited work capabilities."[5] In other *118 words, Dr. Hopkins identified a very narrow type of work that would be compatible with Moss's medical condition and physical limitations-sedentary work with the ability to change positions often but no requirement to perform repetitive motions with his dominant hand. This does not suggest, however, that the doctor concluded that Moss was, in fact, employable and, therefore not permanently and totally disabled. Rather, this evidence simply reflects the type of work restrictions applicable to Moss after his injuries, if he were employable.
In exercising its expertise to determine the technical question of employability, the Commission credited not only the medical opinion of Dr. Hopkins but also the testimony of two vocational experts, both of whom concluded that Moss's inability to perform repetitive motions with his right (dominant) hand and his need to change positions frequently combined to preclude him from competing in the open labor market. Specifically, Cordray stated,
At 61, with a high school education, a lack of sedentary skills, and a history of work[-]related injury, it is my opinion that Mr. Moss would not be "placeable" in the labor market, given the combination of his sedentary work restrictions, ..., as well as his age, education, and lack of transferrable skill level. ... [I]t is my opinion that Mr. Moss is totally vocationally disabled.
The record reflects that the Commission properly applied the test for determining permanent total disability and considered Moss's employability. Specifically, the Commission was convinced both by Dr. Hopkins's testimony that Moss's combined shoulder, elbow, and low back conditions were serious enough to constitute a hindrance or obstacle to employment for the purposes of § 287.190.6(2) and by the testimony of two vocational experts who found Moss to be permanently and totally disabled.
Point I is denied.
Conclusion
Because the requirement in § 287.190.6(2) that a physician demonstrate and certify permanent total disability was met and there was sufficient competent evidence in the record to support the Commission's finding, the Commission did not err in awarding Moss permanent and total disability benefits. Therefore, we affirm the Commission's award.
Victor C. Howard and Lisa White Hardwick, Judges, concur.

The Fund attempts to distinguish this court's decision in Majors by noting that there the medical expert "specifically recommended that Majors obtain a vocational assessment to determine his employability in the open labor market." Treasurer of the State of Mo. v. Majors , 506 S.W.3d 348, 354 (Mo. App. W.D. 2016). Although our opinion in Majors mentioned that the medical expert requested a vocational assessment, our decision in no way hinged on that fact. Likewise, we do not view the fact that Dr. Hopkins did not specifically request a vocational assessment for Moss to be determinative of the outcome here.

"The words a medical expert uses are often important, not so much in and of themselves, but as a reflection of what impression such witness wishes to impart." Majors , 506 S.W.3d at 353 (quoting Malam v. Dep't of Corr. , 492 S.W.3d 926, 929 (Mo. banc 2016) ). The impression imparted by Dr. Hopkins's long list of Moss's physical limitations that would have to be accommodated in the workplace was that Moss's prospects for future employment were dim.