

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| CHERISSE WILLIAMS, | ) | No. ED108262 |
| | ) | |
| Appellant, | ) | Appeal from the Labor and Industrial |
| | ) | Relations Commission |
| vs. | ) | |
| | ) | |
| TREASURER OF MISSOURI AS | ) | |
| CUSTODIAN OF SECOND INJURY | ) | |
| FUND, | ) | |
| | ) | |
| Respondent. | ) | Filed: April 7, 2020 |

## Introduction

Cherisse Williams (Appellant) appeals from the decision of the Labor and Industrial Relations Commission (Commission) affirming the administrative law judge's (ALJ) award of permanent partial disability benefits from the Missouri Second Injury Fund (SIF or Respondent). Appellant claims she is entitled to permanent total disability benefits. We find the Commission misapplied the law in rejecting Appellant's claim for permanent total disability. We further find the award to be against the overwhelming weight of the evidence and unsupported by substantial evidence. Accordingly, we reverse and remand.

Factual and Procedural Background

Appellant worked for Gate Gourmet, Inc. (Employer) for approximately 24 years, from 1983 to 2008. In addition to driving a truck, Appellant would help restock food and beverages onto airplane galleys. In 2005, Appellant suffered the first work-related injury to her neck while lifting a carrier of bottled water. Appellant's injury was treated by Dr. David Lange (Dr. Lange). Dr. Lange diagnosed Appellant with a degenerative disc at C5-C6. Appellant had surgery for this injury, resulting in almost complete symptom relief. Appellant eventually returned to work at full duty. However, Appellant still experienced some pain, and some of her life activities became limited as a result. Appellant's claim against Employer for the injury was resolved by mutual consent in 2006.

In 2008, Appellant was again injured, this time while unloading a cabinet from a compartment in a plane. Appellant experienced a sharp pain between her shoulder blades and neck, and knew immediately she had hurt herself again. Appellant came under the care of Dr. David Raskas (Dr. Raskas). An MRI revealed a cervical disc herniation at C6-C7. Appellant received an epidural injection and then a selective nerve root block as treatment. When that failed to provide relief, Dr. Raskas ordered a Functional Capacity Evaluation (FCE) to identify the precise cause of the symptoms.

The FCE revealed Appellant's maximum work capacity was not up to the level required by her job duties. Upon further examination, Dr. Raskas recommended another surgery. Appellant again saw Dr. Lange, who performed surgery to address the disc herniation caused by her work injury.

2

After surgery, Appellant attended physical therapy at PRORehab. Records from that treatment indicate Appellant experienced ongoing neck pain. Evaluations of her capabilities noted high levels of subjective pain complaints, and possible guarded, self-limiting behavior by Appellant. The record states Appellant showed capabilities to perform light demand work, but noted final disposition should be made by a physician.

Appellant reported the second surgery did not ultimately help her symptoms. Appellant next sought help from Dr. James Coyle (Dr. Coyle). After examination, Dr. Coyle recommended further surgery. Dr. Coyle performed two surgeries on Appellant, in 2010 and 2011. Afterwards, Appellant still had ongoing neck pain, as well as weakness and numbness in her arm. Dr. Coyle referred Appellant to a physical therapist. He also recommended work restrictions of no lifting over 20 pounds, no lifting overhead, and avoiding high-impact activities. Appellant took another FCE at PRORehab. This FCE yielded results similar to the first: that she was physically limited by her injuries, performed the test with some indication of guarding/self-limiting behavior, and had high subjective pain complaints. The FCE report concluded light-work demand level was appropriate, subject to final determination by a physician. Dr. Coyle evaluated Appellant in 2011 and placed permanent lifting restriction of 20 pounds, and no pushing or pulling greater than 44 pounds.

Appellant continued to experience pain and numbness around her neck, especially when lifting. The neck pain also caused nausea, weakness in extremities, and interfered with life activities. Appellant's pain and weakness required her to lie down and rest several times a day, and complete tasks at a slow pace.

Appellant began taking classes at a community college towards a degree in childcare, earning an associate's degree. Appellant also spent time caring for her aunt, earning a paycheck from her aunt's home care service. Appellant obtained this job at the request of her aunt; it was not competitively obtained. Appellant testified she was unable to obtain employment in the childcare field due to her physical restrictions resulting from her work injuries.

Dr. Shawn Berkin (Dr. Berkin) evaluated Appellant twice for the instant claim, first in 2011 and again in 2018. Dr. Berkin's report and testimony via deposition were presented to the ALJ. Dr. Berkin noted pain and loss of range of movement in Appellant's neck. He noted normal muscle bulk and tone in Appellant's upper extremities, but decreased sensation over the lateral surface of her upper right arm. Dr. Berkin opined that the 2008 work injury was the prevailing cause of Appellant's herniated disc at C6-C7, the resulting surgeries, and continuing pain and complications. He rated Appellant as having a 42.5 percent permanent partial disability of the body as a whole referable to the 2008 injury and the resulting treatment. He further opined Appellant's 2005 injury represented a 30 percent disability to the body as a whole. Dr. Berkin noted the 2008 injury and preexisting injury combined synergistically, and amounted to a greater disability than their individual sum; however, Dr. Berkin did not state the ultimate degree of the disability.

Dr. Berkin also offered treatment recommendations and work restrictions. In his 2011 report, Dr. Berkin stated Appellant's lifting should be limited to 35 pounds on occasion and 25 pounds on a frequent basis; Appellant should push or pull no more than

4

35-40 pounds; no lifting with arms extended from her body; no lifting or working above shoulder level; and no forceful gripping, squeezing, pinching, pulling, or twisting with her right hand/wrist. Dr. Berkin also opined that Appellant would need to pace herself through any exertion and take frequent breaks. The results of Dr. Berkin's 2018 report were largely the same. They differed in that Dr. Berkin changed the lifting recommendation to 20-25 pounds occasionally, 15 pounds frequently, and limited pushing and pulling to 35 pounds. Dr. Berkin suggested the reason for this change was that Appellant was older at the time of the second evaluation.

Appellant also presented the testimony of J. Stephen Dolan (Mr. Dolan) via deposition. Mr. Dolan testified as a certified vocational rehabilitation counselor. Mr. Dolan reviewed Appellant's extensive medical and work history. Mr. Dolan testified Appellant had an excellent work history. Mr. Dolan also discussed the limitations which resulted from Appellant's work injuries, including her need to lie down throughout the day to ease the pain and discomfort in her neck. He noted Appellant had to miss class or leave early a number of times due to her pain. Mr. Dolan stated Appellant's vocational test results revealed achievement levels in reading, spelling, and math below average, causing him to question how Appellant had managed to receive an associate's degree. With regard to job skills, Mr. Dolan noted that Appellant had skills in both truck driving and childcare. However, her restrictions prevent her from obtaining jobs in those fields. Based on his findings, Mr. Dolan concluded Appellant is unable to perform any job in the open labor market, and that no reasonable employer could be expected to hire Appellant in her present physical condition. On cross-examination, he acknowledged Dr. Berkin

had not stated Appellant was 100 percent medically disabled, but nonetheless Mr. Dolan concluded no employer would be willing to accommodate the restrictions imposed by Dr. Berkin. The SIF presented no witnesses or exhibits at the hearing.

After reviewing the evidence, the ALJ awarded Appellant permanent partial disability benefits, but denied Appellant's claim for permanent total disability. The ALJ found Appellant's testimony about her pain and physical limitations to be credible. The ALJ also found the medical evidence in the record demonstrates Appellant has substantial work restrictions as a result of her work-related injuries. Nonetheless, the ALJ found the medical evidence insufficient to establish total disability. The ALJ noted the Workers' Compensation Act requires an individual's disability "be demonstrated and certified by a physician." The ALJ found Dr. Berkin had testified and reported extensively on Appellant's work-related injuries and their resulting limitations on Appellant's ability to function, including how the two injuries combined synergistically to impair Appellant to a much greater degree than either would alone. However, in the ALJ's view, Dr. Berkin had come short of meeting the statutory requirement of demonstrating and certifying total disability. The ALJ conceded that Mr. Dolan, the certified vocational expert, had relied on Dr. Berkin's medical testimony, as well as his own expertise in the labor market, in forming his opinion Appellant was unable to obtain employment in the open labor market. However, because such an opinion came from Mr. Dolan, who was not a physician, it could not satisfy the statutory standard of being competent evidence from a physician of permanent total disability.

6

Appellant appealed her decision to the Commission.  The Commission adopted the ALJ's findings and affirmed its decision on the same grounds.  The Commission decided that while the law does not require a physician use "magic words" to certify and demonstrate an individual's permanent total disability, Dr. Berkin's testimony and report did not meet the legal standard for such a finding.  The Commission characterized Dr. Berkin as having "explicitly avoided" finding Appellant totally disabled, and "rather assessed only permanent partial disability."  The Commission was not convinced by the expert opinion of Mr. Dolan.  Instead, the Commission relied on its own expertise to conclude Appellant was permanently partially disabled.

One member of the Commission gave a dissenting opinion.  The dissent opined the majority had misapplied the law by requiring a physician state explicitly an opinion as to Appellant's disability.  The dissent noted that the law does not require physicians to testify upon matters they have no expertise to form an opinion, namely, an ultimate conclusion as to whether the complained-of medical facts make an individual unemployable.  This is because knowledge of employability requires not only medical facts, but knowledge of the open labor market and an individual's vocational skills.  Those latter determinations require a vocational expert such as Mr. Dolan, whose testimony in the instant case was uncontroverted.  As such, the dissent concluded Dr. Berkin's testimony, in conjunction with Mr. Dolan's expert testimony, was sufficient to meet the standard of proof required to show Appellant's permanent total disability.

Appellant makes two claims of error on appeal.  First, she claims the Commission misapplied the law by deciding Dr. Berkin's testimony was statutorily deficient to sustain a claim of total permanent disability.  Second, Appellant claims the Commission's decision, denying permanent total disability benefits and granting only permanent partial disability payments, was against the overwhelming weight of the evidence and unsupported by substantial evidence.

## Standard of Review

Our review of Appellant's claim is governed by the Missouri Constitution, Article 5, Section 18.

> All final decisions, findings, rules and orders on any administrative officer or body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law; and such review shall include the determination whether the same are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record. Unless otherwise provided by law, administrative decisions, findings, rules and orders subject to review under this section or which are otherwise subject to direct judicial review, shall be reviewed in such manner and by such court as the supreme court by rule shall direct and the court so designated shall, in addition to its other jurisdiction, have jurisdiction to hear and determine any such review proceeding.

"This court will uphold the Commission's award if it is supported by competent and substantial evidence and is not contrary to the overwhelming weight of the evidence." Patterson v. Central Freight Lines, 452 S.W.3d 759, 764 (Mo. App. E.D. 2015), citing Hampton v. Big Boy Steel Erection, 121 S.W.3d 220, 223 (Mo. banc 2003). "In reviewing a workers' compensation award, we examine the record as a whole to determine if the award is supported by sufficient competent and substantial evidence, or

8

whether the award is contrary to the overwhelming weight of the evidence." Lawrence v. Treasurer of State-Cust. of Second Injury Fund, 470 S.W.3d 6, 12 (Mo. App. W.D. 2015). "As instructed by the Court in Hampton, we are to review such an award *objectively*; we are *not* to view the evidence and its inferences in the light most favorable to the award…." Id., citing Hampton, 121 S.W.3d at 222-23 (emphasis in original). Where the Commission's decision turns on the weight of the evidence or the credibility of testimony, we defer to the Commission's factual determinations. Molder v. Mo. State Treasurer, 342 S.W.3d 406, 409 (Mo. App. W.D. 2011). However, our review of the Commission's interpretation and application of the law is *de novo*. Lawrence, 470 S.W.3d at 12.

Discussion

Respondent argues Appellant must prevail on both points on appeal to warrant reversal; that is, she must show the Commission and ALJ misstated or misapplied the law in reaching its conclusion, *and* the award is against the overwhelming weight of the evidence or not supported by substantial evidence. We agree, and thus discuss Appellant's claims together.

At the heart of this case is the Western District's recent decision in Moss v. Treasurer of State–Custodian of Second Injury Fund, 570 S.W.3d 110 (Mo. App. W.D. 2018). In adopting and affirming the ALJ's decision, the Commission recognized and acknowledged the holding in Moss applied to the instant case. However, despite doing so, the Commission misapplied Moss in reaching its decision.

Moss involved a corrections officer with a preexisting injury who sustained another injury to his right shoulder while at work. Id. at 113. Moss retained an orthopedic surgeon to assess his condition for his claim against the SIF. Id. The orthopedic surgeon rated the primary shoulder injury as causing 35 percent disability, his preexisting elbow injury at 16.5 percent, and his preexisting lower back/body as a whole disability at 25 percent. The orthopedic surgeon opined his injuries combined synergistically to create a disability greater than the sum of their individual quantities. He further opined Moss had limited work capabilities, requiring mostly sedentary work with lifting limited to 10 pounds from waist to shoulders with his right arm, and no repetitive bending at the waist. Id. at 113–14.

Moss also retained a vocational consultant who, based on the evaluation by the orthopedic surgeon, the consultant's own expertise of the labor market and Moss's work skills background, concluded Moss would be unable to obtain employment in any field in which he would be qualified to work but for his physical limitations. Id. at 114. The SIF did not present any contrary medical testimony or vocational expert witnesses. Id.

After considering the evidence, the ALJ in Moss awarded permanent total disability benefits. This award was affirmed by the Commission. Id. at 114–15. The SIF appealed, claiming Moss had failed to satisfy the evidentiary burden imposed by the Workers' Compensation Act. Specifically, it argued Section 287.190.6(2)[1], which states "[p]ermanent partial disability or permanent total disability shall be demonstrated and

_____

[1]All statutory references are to RSMo Cum. Supp. (2013) unless otherwise indicated.

certified by a physician," had not been met because the orthopedic surgeon had not testified explicitly that Moss would be unable to obtain any job in the open labor market, instead only testifying to the underlying medical facts which gave rise to Moss's unemployability. Id. at 114.

The Moss court rejected the argument that the statute imposed a duty on the physician to make an ultimate conclusion on the employability of the individual seeking benefits. Id. at 116. The court noted that under Section 287.020 the term "total disability" is defined as the "inability to return to any employment and not merely inability to return to the employment in which the employee was engaged at the time of the accident." Id. (citations and internal quotation marks omitted). "The well-established test for determining permanent total disability is whether the worker is able to compete in the open labor market." Id. (citations and internal quotation marks omitted). "Thus, determining permanent total disability requires medical evidence of the employee's present physical condition and anticipated work restrictions, as well as evidence of the current labor market, which a physician may not be able to provide." Id. That the physician did not testify to matters outside of their competence, that is, the state of the current labor market and the claimant's vocational background, does not mean the physician did not meet the evidentiary standard required by the Workers' Compensation Act. Id. Rather, the Commission is able to rely on both testimony from medical experts about the underlying physical (and, where applicable, psychological) condition of the claimant as well as non-medical experts in "assessing whether, in light of his medical condition and functional ability, the claimant is employable." Id. at 117; see also

11

Patterson, 452 S.W.3d at 767 ("[T]he record need not contain a single expert opinion addressing the entirety of a claimant's conditions. Rather, the Commission may consider the opinions of multiple experts of differing specialties to arrive at its factual determination as to the parts and sum of a claimant's conditions.").

In the case at bar, when the Commission affirmed the ALJ's decision, it acknowledged the holding in Moss, which relieves physicians from employing "magic words" to declare a claimant statutorily disabled. It appears nonetheless the Commission and the ALJ denied Appellant's claim because Dr. Berkin failed to use those "magic words" in his testimony. Having acknowledged that Moss controls in the instant case, we cannot discern how the Commission came to its conclusion, as the record here reveals facts that are nearly identical to those in Moss. Like the physician in Moss, Dr. Berkin testified about Appellant's work-related injuries, how they affect her physically, how they may be quantified individually, and how they combine synergistically to create a physical hindrance greater than the sum of their individual quantities. Again, as in Moss, these medical conclusions were relied on by Mr. Dolan, a certified vocational expert, to conclude that, based on his expertise and knowledge of Appellant's vocational skills, work history, and the open labor market, Appellant was completely unemployable. And, again, identical to Moss, the SIF presented no medical or expert testimony that controverted any of Appellant's evidence.

Nothing in this record provides any justification for the Commission reaching a conclusion at odds with Moss. Critically, we reject the Commission's contention that Dr. Berkin "explicitly avoided" certifying Appellant as totally disabled. We have carefully

12

reviewed Dr. Berkin's deposition testimony here cited by the Commission. To be sure, Dr. Berkin did not use those "magic words" of "total disability" in his testimony, but nothing in the record suggests he "explicitly avoided" doing so. To the extent the Commission seems to rely on this "explicit avoidance" as substantive evidence of Dr. Berkin's belief Appellant *is not* permanently totally disabled, we find this to be a mischaracterization without support in the record. The Commission's arbitrary and subjective characterization of Dr. Berkin's testimony is not substantial evidence upon which it may have based its decision.

In addition to misapplying the law by requiring Dr. Berkin testify explicitly as to Appellant's total disability, the Commission further erred by subsequently rejecting all other evidence in the record, including Mr. Dolan's expert opinion, instead opting to rely on their own "expertise" to conclude Appellant is not permanently disabled. It is true that "ultimately, the employability of an individual is a technical matter within the Commission's expertise." Patterson, 452 S.W.3d at 767. This expertise is important in aiding the Commission's determination of "what weight it will accord expert testimony" on issues on which experts conflict. Id. However, the Commission's expertise on these matters is not a license to arbitrarily ignore competent, uncontroverted evidence in the record.

As in Moss, the evidence presented by Appellant was not contested by the SIF at the hearing before the ALJ, either through introduction of contrary evidence or impeaching Appellant or her expert's testimony through cross-examination. "Acceptance or rejection of evidence is generally an issue for the Commission to determine."

13

Hazeltine v. Second Injury Fund, 591 S.W.3d 45, 59 (Mo. App. E.D. 2019), citing

Houston v. Roadway Express, Inc., 133 S.W.3d 173, 179 (Mo. App. S.D. 2004). "When

the Commission reaches its decision by *expressly making credibility findings*, the

Commission may disbelieve uncontradicted and unimpeached testimony." Id. (emphasis

added). However, "where the record is wholly silent concerning the Commission's

weighing of credibility, and neither the claimant nor the experts testifying on his or her

behalf are contradicted or impeached, the Commission may not arbitrarily disregard and

ignore competent, substantial and undisputed evidence." Id. (citations and internal

quotation marks omitted). This is particularly applicable in the instant case, where the

only credibility findings mentioned in the ALJ's decision, which was adopted and

affirmed by the Commission, were as to Appellant, whom the ALJ found credible.

Neither the ALJ nor the Commission made credibility determinations as to Mr. Dolan's

testimony; nor did they controvert his testimony through presenting their own, conflicting

expert opinion, or impeaching him on cross-examination. As such, the Commission was

not free to arbitrarily disregard the substantial and competent evidence supporting

Appellant's claim.

Finally, on appeal Respondent argues the instant case is distinguishable from

Moss because there is conflicting evidence in the record. Respondent points out that Dr.

Lange and Dr. Coyle, who treated Appellant's injuries but did not testify at the hearing,

reported in Appellant's medical records that she was capable of working at a "light

demand level." Respondent claims this conflicts with the testimony of Appellant's

vocational expert, Mr. Dolan, who testified Appellant is permanently totally disabled, and

14

thus unable to obtain any employment. Respondent is mistaken in its belief this evidence conflicts. All of the physicians who reported on Appellant's physical condition did just that, and no more: reported on her *physical* condition. Saying Appellant could work at a "light demand level" is not an ultimate conclusion on her employability; rather, it describes the physical limitations caused by her injury. As the Commission itself noted, no physician in the record testified about the ultimate question of Appellant's employability. This includes any opinion on whether her current employer would allow her to return to work with such physical restrictions,[2] or what effect, given her vocational background and the current state of the open labor market, those physical restrictions would have on Appellant's ability to obtain future employment. Because the evidence from the physicians who evaluated Appellant's physical condition and the testimony of Mr. Dolan reference different aspects of Appellant's claim, one medical and one vocational, the superficial discrepancy pointed out by Respondent does not amount to an actual conflict in the evidence.

## Conclusion

In summary, we find the Commission misapplied the law in deciding Dr. Berkin's testimony was, as a matter of law, insufficient to support a finding of permanent total disability. Further, we find the Commission's decision to be against the overwhelming weight of the evidence, and not supported by sufficient and competent evidence, as it arbitrarily ignored the uncontroverted evidence presented by Appellant. As such, we find

---

[2]Respondent concedes that the Commission found Appellant's physical restrictions prevented her continued employment at Gateway Gourmet, Inc.

the SIF to be liable to Appellant for her permanent total disability. We reverse the Commission's decision, and remand this case with instructions to enter an award consistent with the findings in this opinion.

_____
SHERRI B. SULLIVAN, J.

Mary K. Hoff, P.J., and
Angela T. Quigless, J., concur.