

# In the
# Missouri Court of Appeals
# Western District

ROBERT SCHEBAUM, )
)
Appellant, ) WD84765
)
v. ) OPINION FILED:
) April 5, 2022
TREASURER OF THE STATE OF )
MISSOURI-CUSTODIAN OF THE )
SECOND INJURY FUND, )
)
Respondent. )

## Appeal from the Labor and Industrial Relations Commission

Before Division Four: Cynthia L. Martin, Chief Judge, Presiding, Thomas N. Chapman, Judge and W. Douglas Thomson, Judge

Robert Schebaum ("Schebaum") appeals from the Labor and Industrial Relations Commission's ("Commission") determination that the Second Injury Fund ("Fund") is not liable to Schebaum for permanent total disability benefits. Schebaum argues that the Commission erroneously interpreted and applied the law in failing to consider his preexisting hearing loss in determining whether he established a compensable permanent total disability claim. Finding no error, we affirm.

## Factual and Procedural Background[1]

As a child, Schebaum became deaf in both ears. Due to his hearing loss, Schebaum primarily communicates by reading lips and writing. Schebaum's work history consists almost exclusively of manual labor.

In 2006, Schebaum began working part-time at ABB, Holdings Inc. ("Employer") in Jefferson City, Missouri on an assembly line. Six months later, he was promoted to a full-time position. On August 2, 2007, Schebaum was working on a freight elevator when the cables on the elevator broke, causing the elevator to fall. Schebaum injured his right knee. It was determined that Schebaum had a tear in his right knee, and on September 12, 2007, Schebaum underwent surgery to repair the tear. Schebaum was laid off in June 2008.

Schebaum began a factory job at another company, but was not able to continue that work due to knee pain. Schebaum was terminated in December 2008. Schebaum did not work again until June 2011, when Employer re-hired him.

Schebaum then saw Dr. Michael Snyder ("Dr. Snyder") for his continued right knee pain. Attempted non-surgical treatment did not improve Schebaum's right knee. Dr. Snyder recommended a total knee arthroplasty, which was performed on December 21, 2011. Schebaum filed a claim for workers' compensation benefits against Employer seeking compensation for the injury to his right knee. That claim was settled based upon

---

[1]"In reviewing the Commission's decision, we view the evidence objectively and not in the light most favorable to the decision of the Commission." *Dubuc v. Treasurer of State-Custodian of Second Injury Fund*, 597 S.W.3d 372, 374 n.2 (Mo. App. W.D. 2020) (quoting *Moss v. Treasurer of State-Custodian of Second Injury Fund*, 570 S.W.3d 110, 113 n.2 (Mo. App. W.D. 2018)).

an agreement that Schebaum's 2007 injury represented a 45 percent permanent partial disability of the right knee.

On January 14, 2014, Schebaum walked down a set of stairs while working at Employer's. The last step swung backwards, causing Schebaum to fall and land on his knees. Schebaum again saw Dr. Snyder, who ordered an MRI scan. The MRI scan indicated "no instability of the right knee or new findings," but revealed "an acute medial meniscus tear" in Schebaum's left knee. On September 2, 2014, Dr. Snyder performed surgery on Schebaum's left knee. Schebaum saw Dr. Snyder for follow up appointments, and was released on November 12, 2014 at maximum medical improvement. Schebaum went back to work with Employer briefly in November 2014, but was not able to continue the work due to the physical nature of the job. Schebaum has not worked since.

Schebaum filed a claim for workers' compensation benefits on April 30, 2014 seeking compensation for the injuries to both knees. Schebaum's claim sought compensation from Employer and the Fund. Schebaum settled his claim with Employer on December 20, 2018 for a lump sum payment of $20,086.60 that represented 25 percent permanent partial disability of the left knee.

An Administrative Law Judge ("ALJ") heard Schebaum's claim against the Fund on July 28, 2020 and August 25, 2020. Schebaum testified and presented evidence from his treating physician, Dr. Snyder; medical expert Dr. P. Brent Koprivica ("Dr. Koprivica"); and vocational rehabilitation counselor, Phillip Eldred ("Eldred").

Eldred evaluated Schebaum on July 8, 2010 after his 2007 right knee injury. In a summary of that evaluation, Eldred explained that he believed Schebaum was

3

unemployable because he could not perform any of his past work, and because he "would have problems being retrained in a formal training program due to his constant pain, deafness, and low academic test scores," and was "unable to perform sedentary unskilled jobs due to his constant pain and deafness." Eldred opined that Schebaum was "permanently and totally disabled as a result of his injury on August 2, 2007 combined with his pre-existing deafness." Eldred later prepared three addendums to this report, all three of which reached the same conclusion that Schebaum was "permanently and totally disabled as a result of his injury on August 2, 2007 combined with his pre-existing deafness." In the last addendum, which was dated June 28, 2018, Eldred acknowledged that he had reviewed additional reports from Dr. Snyder and Dr. Koprivica following Schebaum's 2014 injury, but stated that his "opinion has not changed" and that he believed Schebaum was "permanently and totally disabled as a result of his injury on August 2, 2007 combined with his pre-existing deafness."

Despite Eldred's report and addendums, during the hearing before the ALJ, Eldred testified that irrespective of Schebaum's preexisting hearing loss, Schebaum was permanently and totally disabled as a result of his 2007 and 2014 knee injuries.

Dr. Snyder, who treated Schebaum in connection with his 2007 and 2014 knee injuries, opined that Schebaum was unemployable due "to his right and left knee problem, which are work related, and the fact that he has problems processing and learning" as a result of his hearing loss.

Dr. Koprivica evaluated Schebaum on January 16, 2010, in connection with the 2007 knee injury. Dr. Koprivica wrote a contemporaneous report opining that Schebaum's

4

preexisting hearing loss represented 180 weeks of disability, and that he would appropriate "a [35] percent permanent partial disability of the right lower extremity at the level of the knee (160-week level)." Dr. Koprivica further stated that "the synergism of combining the pre-existent [hearing loss] with the additional disability attributable to the primary injury of August 2, 2007, is represented by a 10 percent enhancement factor." Dr. Koprivica noted that "Schebaum is employable, despite the significant industrial disabilities I have identified." Dr. Koprivica later modified his opinion concerning the level of disability associated with Schebaum's right knee injury based upon additional information received from Dr. Snyder, and concluded that Schebaum's 2007 injury represented a 50 percent permanent partial disability of his right knee.

Dr. Koprivica evaluated Schebaum again on December 19, 2015, in connection with the 2014 knee injury. Dr. Koprivica wrote a contemporaneous report opining that Schebaum's 2014 injury "is felt to represent the direct, proximate and prevailing factor in [] Schebaum's development of new permanent injury involving the left knee," and that the injury carried a permanent partial disability of 25 percent of the left knee. During Dr. Koprivica's April 20, 2018 deposition, he opined that Schebaum is permanently and totally disabled due to a combination of his preexisting hearing loss, his preexisting disability resulting from his 2007 work-related right knee injury, and his disability resulting from his 2014 work-related left knee injury.

Dr. Timothy D. Farley ("Dr. Farley") evaluated Schebaum on behalf of Employer after his 2007 and 2014 knee injuries. Dr. Farley did not testify in the hearing before the ALJ. However, the Fund introduced Dr. Farley's report dated May 9, 2017, wherein he

5

opined that Schebaum "has a 7% permanent partial disability in the right knee related to the August 2, 2007 date of injury" and that he believed Schebaum "suffered no permanent partial disability to his right knee from his January 14, 2014 date of injury."

The ALJ issued its award on November 10, 2020 ("ALJ Award"). The ALJ denied Schebaum benefits from the Fund, holding that his claim failed to meet the requirements of section 287.220.3(2) because he failed to establish that he is "permanently and totally disabled as the result of his injury of January 14, 2014, to his left knee in combination with a single preexisting disability that meets the requirements set out in section 287.220.3(2)."[2] The ALJ explained:

> Based on [] Schebaum's testimony as well as the opinions of Dr. Koprivica, Dr. Snyder, and Dr. Farley, I find that the permanent disability resulting from the January 14, 2014 accident and injury is 25 percent of the left knee. Similarly, and based on [] Schebaum's testimony and the opinions of Dr. Koprivica, Dr. Snyder, and Dr. Farley, I find that the disability attributable to [] Schebaum's right knee is 45 percent of the right knee and the disability as the result of the total hearing loss is 180 weeks. I find that each of these disabilities exceeds the 50 week minimum set forth in section 287.220.3(2).
>
> I find that the preexisting right knee injury and primary left knee injury satisfy the requirement of 287.287.220.3(2)(a)a.(iv) [sic].
>
> Both Dr. Koprivica and Dr. Snyder testified credibly that [] Schebaum is permanently and totally disabled as the result of the 2014 left knee injury combined with his 2007 right knee injury and his preexisting complete loss of hearing. [] Schebaum testified to his inability to be gainfully employed as the result of his knee injuries and his complete loss of hearing. While [] Eldred testified at [the] hearing that the two knee injuries combined to make [] Schebaum permanently and totally disabled, his testimony is contradicted by his report of 2018 in which he again cites [] Schebaum's deafness as a factor in his permanent and total disability and by his testimony at [the] hearing in which he states that communication is a factor in determining

---

[2]All statutory references are to RSMo 2000 as supplemented through January 14, 2014, the date of Schebaum's compensable workplace injury, unless otherwise indicated.

employability. I find the opinions of Dr. Koprivica and Dr. Snyder more compelling than the internally inconsistent opinions of [] Eldred.

Schebaum sought administrative review of his claim for Fund benefits by the Commission. While his application for administrative review was pending, the Missouri Supreme Court issued its opinion in *Treasurer of State v. Parker*, 622 S.W.3d 178 (Mo. banc 2021). On August 10, 2021, the Commission issued its Final Award Denying Compensation ("Final Award"), and affirmed the ALJ Award with a supplemental opinion. The Commission explained that in order to establish a compensable claim under section 287.220.3, Schebaum must meet two conditions: "(1) have at least one 'qualifying' preexisting disability as defined by [section] 287.220.3(2)(a); [and] (2) [t]hereafter sustain a subsequent compensable work-related injury that combined with employee's preexisting disability(ies) results in [permanent and total disability]." The Commission reasoned:

> Based upon our understanding of *Parker*, we find that employee is not permanently and totally disabled based upon a combination of his January 14, 2014, primary injury (2014 injury) and his qualifying preexisting disabilities. Drs. [] Koprivica and [] Snyder both considered all of employee's preexisting disabilities prior to the 2014 injury, including those that do not qualify pursuant to [section] 287.220.3(2), in their determination that employee was permanently and totally disabled. For example, employee's preexisting hearing loss does not qualify under [section] 287.220.3 as a preexisting disability. Although the hearing loss does appear to meet the first requirement for [] Fund liability (in that it exceeds the 50-week minimum threshold) it fails to meet any of the four subcategories in [section] 287.220.3(2)(a) in order to meet the second condition and qualify as a preexisting disability that counts towards [] Fund liability.
>
> Employee's August 2, 2007 preexisting injury to his right knee appears to qualify as a preexisting injury for [] Fund liability under [section] 287.220.3(2)(a)(iv), because it exceeds the 50-week threshold (45% [permanent partial disability], at the 160-week level), and because employee's 2014 primary injury to the left knee was a subsequent compensable work-related injury of the opposite extremity. However, as we

7

stated above, neither medical expert considered the preexisting right knee and the primary left knee injuries alone. Therefore, we find no [] Fund liability in this case.

The Decision affirmed and incorporated the ALJ Award "to the extent not inconsistent" with the Final Award.

Schebaum appeals.

## Standard of Review

Section 287.495.1 controls our review of the Final Award:

The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

Section 287.495.1. "Although we defer to the Commission's factual findings, including those findings about the credibility of witnesses, we review *de novo* the Commission's determinations of law." *Wilson v. Treasurer of State-Custodian of Second Injury Fund*, 632 S.W.3d 874, 878 (Mo. App. W.D. 2021) (citing *Hayes v. Ginger C, LLC*, 582 S.W.3d 140, 146-47 (Mo. App. W.D. 2019)). "Decisions involving statutory interpretation . . . are reviewed *de novo*." *Id.* (quoting *White v. ConAgra Packaged Foods, LLC*, 535 S.W.3d 336, 338 (Mo. banc 2017)).

8

**Analysis**

Schebaum raises two points on appeal, both of which argue that the Commission erroneously interpreted and applied the law when it denied him compensation from the Fund. In his first point on appeal, Schebaum contends that his hearing loss qualifies as a preexisting disability under section 287.220.3(2)(a)a(iii) because his hearing loss, "combined with his two knee injuries, caused the disability which precluded him from gainful employment." In his second point on appeal, Schebaum argues that even if his hearing loss does not qualify as a preexisting disability under section 287.220.3, the Commission nevertheless should have considered the non-qualifying disability as a factor affecting his employability when considering whether he was permanently and totally disabled.

"Section 287.220 establishes the Second Injury Fund." *Dubuc v. Treasurer of State-Custodian of Second Injury Fund*, 597 S.W.3d 372, 377 (Mo. App. W.D. 2020). "The General Assembly created the Second Injury Fund in an effort 'to encourage the employment of individuals who are already disabled from a preexisting injury, regardless of the type or cause of that injury.'" *Id.* (quoting *Treasurer of State-Custodian of Second Injury Fund v. Witte*, 414 S.W.3d 455, 460 (Mo. banc 2013)). The Fund "ensures that 'an employer is only liable for the disability caused by the work injury[;]'" however, the "Fund's liability for permanent partial and total disability claims is statutorily limited [] to the parameters described in section 287.220." *Id.* (quoting *Witte*, 414 S.W.3d at 460).

"In 2013, the legislature amended section 287.220 to limit the number of workers eligible for fund benefits because the Fund was insolvent." *Parker*, 622 S.W.3d at 181

9

(citation omitted). "The legislature created subsection 2 of section 287.220 for compensable work injuries occurring before January 1, 2014, and subsection 3 for compensable work injuries occurring after January 1, 2014." *Id.* (citation omitted). "[T]he legislature limited the Fund's liability for [permanent total disability] claims under subsection 3" and "it eliminated claims for permanent partial disability [] under subsection 3." *Id.* Schebaum's claim for compensation from the Fund involves a compensable work injury that occurred on January 14, 2014; therefore, section 287.220.3 is applicable.

Pursuant to section 287.220.3, Schebaum "must meet two conditions to make a compensable [permanent total disability] claim." *Parker*, 622 S.W.3d at 181. First, he "must have *at least* one qualifying preexisting disability." *Id.* (emphasis in original) (citing section 287.220.3(2)(a)). Section 287.220.3(2)(a)a sets forth how a preexisting disability may qualify under the first condition--it "must be medically documented, equal at least 50 weeks of permanent partial disability, and meet one of the following criteria" set forth in 287.220.3(2)(a)a(i)-(iv):

> (i) A direct result of active military duty in any branch of the United States Armed Forces; or
>
> (ii) A direct result of a compensable injury as defined in section 287.020; or
>
> (iii) Not a compensable injury, but such preexisting disability directly and significantly aggravates or accelerates the subsequent work-related injury and shall not include unrelated preexisting injuries or conditions that do not aggravate or accelerate the subsequent work-related injury; or
>
> (iv) A preexisting permanent partial disability of an extremity, loss of eyesight in one eye, or loss of hearing in one ear, when there is a subsequent compensable work-related injury as set forth in subparagraph b of the opposite extremity, loss of eyesight in the other eye, or loss of hearing in the other ear[.]

10

*Parker*, 622 S.W.3d at 181 (quoting section 287.220.3(2)(a)a).

Under the second condition of section 287.220.3, Schebaum must "thereafter sustain[] a subsequent compensable work-related injury that, when combined with the preexisting disability, as set forth in items (i), (ii), (iii), or (iv) of subparagraph a. of this paragraph, results in a permanent total disability as defined under this chapter" in order to make a compensable permanent total disability claim. Section 287.220.3(2)(a)b. "The 'subsequent compensable work-related injury' is often referred to as the 'primary injury.'" *Parker*, 622 S.W.3d at 181.

While Schebaum's application for review of the ALJ Award by the Commission was pending, the Missouri Supreme Court issued its decision in *Parker*, 622 S.W.3d 178. *Parker* held that multiple preexisting disabilities which qualify under section 287.220.3(2)(a)a may be combined with the primary injury in determining whether a claimant is permanently and totally disabled for purposes of section 287.220.3. 622 S.W.3d at 182. Accordingly, the Commission issued a supplemental opinion affirming the result of the ALJ Award, but explaining that Schebaum did not qualify for Fund compensation, not on the basis relied on by the ALJ, but because the credible testimony failed to establish that Schebaum's subsequent compensable work-related injury to his left knee in 2014 combined with qualifying preexisting disabilities pursuant to section 287.220.3(2)(a)a(i)-(iv) to result in permanent total disabilty. In reaching this conclusion, the Commission acknowledged that the 2007 injury to Schebaum's right knee is a qualifying preexisting disability pursuant to section 287.220.3(2)(a)a(i)-(iv). However, the

11

Commission held that Schebaum's hearing loss is not a qualifying preexisting disability for purposes of section 287.220.3(2)(a)a(i)-(iv) because even though it is medically documented and exceeds the 50-week minimum threshold, "it fails to meet any of the four subcategories in [section] 287.220.3(2)(a)." Because the only credible testimony offered by Schebaum established that he was permanently and totally disabled based on a combination of his two knee injuries and his hearing loss, and because the evidence that Schebaum offered to support that he was permanently and totally disabled based solely upon the combination of his two knee injuries was deemed not credible, the Commission found that Schebaum failed to establish a compensable permanent total disability claim against the Fund.

*Point One*

Schebaum's first point on appeal argues that the Commission should have found that his hearing loss qualified as a preexisting disability under section 287.220.3(2)(a)a(iii). We disagree.

Section 287.220.3(2)(a)a(iii) describes three criteria: (1) a preexisting disability that is not a compensable injury; (2) that directly and significantly aggravates or accelerates the subsequent work-related injury; and (3) that is not an unrelated preexisting injury or condition that does not aggravate or accelerate the subsequent work-related injury. In other words, a preexisting injury or condition that equals a minimum of fifty weeks of permanent partial disability compensation according to medical standards (section 287.200.3(2)(a)a), that is not itself a compensable injury, but that nonetheless "significantly aggravates or accelerates the subsequent work-related injury" (section

12

287.220.3(2)2(a)a(iii)) *can* combine with a subsequent work-related injury to support Fund liability. But any such preexisting injury or condition that is unrelated and that does not aggravate or accelerate the subsequent work-related injury *cannot* combine with a subsequent work-related injury to support Fund liability.

Here, it is uncontested that Schebaum's "subsequent work-related injury" is his 2014 left knee injury. And it is uncontested that Schebaum's hearing loss rated at more than fifty weeks of permanent total disability, but was not a compensable injury. Thus, the only question is whether Schebaum's preexisting hearing loss "directly and significantly aggravate[d] or accelerate[d]" his 2014 left knee injury, or was instead unrelated and did not aggravate or accelerate the 2014 left knee injury.

The Commission found that Schebaum's preexisting hearing loss was unrelated and did not aggravate or accelerate his 2014 left knee injury. This conclusion is supported by sufficient competent evidence in the record, as there was no evidence to support a contrary finding.

Perhaps cognizant of this unavoidable fact, Schebaum creatively argues that the Commission created legal error. Schebaum argues that the Commission should have construed the phrase "subsequent work-related *injury*" in section 287.220.3(2)(a)a(iii) to include not just the medical condition caused by the 2014 injury to his left knee, but as well the disability caused by the 2014 injury to his left knee. To support this argument, Schebaum cites to section 287.020.3(1), which defines "injury" as "an injury which has arisen out of and in the course of employment," and which provides that an "injury by accident is compensable only if the accident was the prevailing factor in causing both the

13

resulting medical condition and disability." Schebaum extrapolates that because work-related injuries have two components, a medical condition and a resultant disability, it should follow that the phrase "subsequent work-related injury" in section 287.220.3(2)(a)a(iii) "refer[s] to the *disability caused by the last injury, rather than the medical condition caused by the last injury,*" such that the test should be whether a preexisting non-compensable injury or condition "significantly increase[s] the disability"[3] resulting from the 2014 left knee injury, rather than the medical condition resulting from the 2014 left knee injury.

Schebaum's contention is flawed for several reasons, not the least of which is his failure to recognize that the reference to "disability" in section 287.020.3(1)'s definition of "injury" addresses not whether an injury has occurred in the literal sense, but whether an injury caused by an accident is compensable because the accident was the prevailing factor for both the resulting medical condition and disability. Moreover, Schebaum's contention is in direct opposition to the General Assembly's plain intent to limit Fund liability from and after January 1, 2014 by foreclosing compensation for permanent, total disability caused by the synergistic effect of combining disabilities that result from a subsequent work-related injury with disabilities that result from preexisting, non-compensable injuries or conditions that do not *directly* and significantly aggravate or accelerate the subsequent work-related injury.

---

[3]The statute requires that the "preexisting disability directly and significantly aggravates or accelerates the subsequent work-related injury," which Schebaum interprets to mean "to make worse," "to increase the speed of," or "to bring about sooner." However, his argument primarily focuses on whether his hearing loss *increases* his total disability.

14

This point is underscored by our holding in *Wilson* v. *Treasurer of State-Custodian of Second Injury Fund*, 632 S.W.3d 874, 879 (Mo. App. W.D. 2021). In *Wilson*, an employee's preexisting cardiovascular condition was found to qualify as a preexisting disability under section 287.220.3(2)(a)a(iii):

> The ALJ found, based on Dr. Volarich's testimony, that Employee's [permanent partial disability] to his right foot was 42.5% of the right foot or 150 weeks [permanent partial disability] from the November 8, 2017 injury; 35% or 56 weeks [permanent partial disability] at the right knee from the prior right knee injury of August 5, 1987; 55% or 88 weeks [permanent partial disability] at the left knee from the August 4, 1992 injury; and 35% or 140 weeks [permanent partial disability] of the body from his preexisting cardiovascular condition. *The ALJ also found that Employee's preexisting cardiovascular condition aggravated and accelerated his November 8, 2017 injury to the right foot* and found credible Dr. Volarich's opinion that *Employee's right foot did not heal as anticipated in part as a result of diminished blood flow stemming from his cardiovascular condition.* Each of Employee's preexisting conditions satisfies section 287.220.3(2)(a)a and meets the 50-week [permanent partial disability] threshold.

(Emphasis added). Similarly, in *Swafford v. Treasurer of Missouri*, 2022 WL 453139, at *5, *7 (Mo. App. W.D. Feb. 15, 2022), we concluded that an employee's preexisting disabilities consisting of cardiac conditions and ankylosing spondylitis ("AS"), "a congenital condition which caused [the employee's] spine and rib bones to fuse together over time," qualified under section 287.220.3(2)(a)a(iii), where medical evidence established a direct impact on the employee's subsequent work-related injury to his right shoulder:

> [T]he testimony of the two physicians established that [the employee's] preexisting conditions "directly and significantly aggravate[d]" his primary work injury, as required by [section] 287.220.3(2)(a)a(iii). Dr. Lingenfelter explained that *[the employee's] preexisting cardiac condition prevented him from receiving surgical treatment for his shoulder injury.* Dr. Lingenfelter also opined that *[the employee's AS] directly and significantly*

15

**aggravated his October 6, 2017 work injury by limiting his range of motion, and "creat[ing] the impingement phenomenon" which caused pain and inflammation in his right shoulder.** Dr. Lingenfelter specifically stated that **[the employee's] AS takes an "equal share [of the] blame" for the right shoulder's current impaired condition.**

(Emphasis added).[4]

In both *Wilson* and *Swafford*, evidence of a direct relationship between a preexisting non-compensable injury, and the cause of, or ability to recover or to be appropriately treated for, a subsequent work-related injury was required to satisfy section 287.220.3(2)(a)a(iii). This is consistent with the commonly understood meaning of the words "aggravate," "accelerate, and "unrelated." "To 'aggravate' means 'to make worse, more serious, or more severe; to intensify unpleasantly.'" *Swafford*, 2022 WL 453139, at *8 (quoting Webster's Third New International Dictionary 41 (2022)). "Accelerate," in the context of an injury or condition means "to bring about at an earlier point of time" or "to hasten the ordinary progress or the development of." Webster's Third New International Dictionary 10 (2022). "Unrelated" means "discrete, disjoined, [or] separate." Webster's Third New International Dictionary 2507 (2022). The Commission found that Schebaum's

---

[4]*Swafford* remains subject to post-opinion motions for rehearing or transfer, and is not yet final. We refer to it here, though it is not yet final, because it represents this court's most recent discussion of section 287.220.3(2)(a)a(iii). The above passage quoted from *Swafford* continues to note that "Dr. Koprivica testified to a 'significant synergistic effect' between Swafford's preexisting conditions and his primary work injury," and observed that this testimony was at least "some additional evidence that the preexisting disabilities 'aggravated' the primary injury." 2022 WL 453139, at *7 (Mo. App. W.D. Feb. 15, 2022). *Swafford* does not hold, and should not be read for the proposition that, the synergistic effect of disabilities associated with unrelated medical conditions is sufficient to establish aggravation or acceleration of a primary work injury for purposes of establishing Fund liability under section 287.220.3(2)(a)a(iii). To the contrary, *Swafford* holds that section 287.220.3(2)(a)a(iii) requires evidence that a non-compensable preexisting injury directly and significantly contributed to either the cause of, the inability to be adequately treated for, or the inability to properly recover from, the primary work injury. *Swafford's* statement that "synergistic effect" evidence may serve as "some additional evidence" signals only that said evidence may lend additional support to medical opinions suggesting that a preexisting non-compensable injury directly and significantly aggravated or accelerated the primary work injury.

16

preexisting hearing loss was an unrelated preexisting disability that did not aggravate or accelerate his subsequent work-related injury to his left knee. This conclusion is supported by substantial competent evidence in the record, and by a correct construction of section 287.220.3(2)(a)a(iii).

Point One is denied.

*Point Two*

In his second point on appeal, Schebaum argues that even if the Commission correctly concluded that his preexisting hearing loss does not qualify as a preexisting disability under section 287.220.3(2)(a)a(iii), the Commission nevertheless erred when it held that it was Schebaum's burden "to demonstrate he is permanently and totally disabled without consideration of any other non-qualifying factors relevant to employability[.]" Schebaum relies upon *Klecka v. Treasurer of Missouri*, No. ED108721, 2021 WL 2546417, at *7-8 (Mo. App. E.D. June 22, 2021). However, *Klecka* carries no precedential value as the Missouri Supreme Court accepted transfer of the case on October 26, 2021. *See Estes as Next Friend for Doe v. Bd. of Trs. of Mo. Pub. Entity Risk Mgmt. Fund*, 623 S.W.3d 678, 685 n.5 (Mo. App. W.D. 2021) (citations omitted). Moreover, *Klecka* is of no aid to Schebaum. *Klecka* held that non-medical considerations such as age, work experience and history, education, and training can be considered in determining Fund liability for permanent total disability because the phrase "total disability" is defined by the Workers' Compensation Act to include reference to non-medical conditions. *Klecka*, 2021 WL 2546417, at *7-8. No evidence was presented by Schebaum that he was permanently and totally disabled due to a combination of his subsequent 2014 work-related injury to his left

17

knee, his qualifying 2007 preexisting injury to his right knee, and non-medical conditions such as age, work experience and history, education, or training. Though some evidence connected Schebaum's hearing loss to attendant learning limitations, those limitations were discussed as inherent to the disability associated with the medical condition of being deaf, and were not discrete non-medical conditions.

To the extent Schebaum relies on *Klecka* to argue that non-qualifying preexisting disabilities should be considered so long as there is at least one qualifying preexisting disability to combine with a subsequent work-related injury to determine permanent and total disability, his argument disregards *Parker*. In *Parker*, 622 S.W.3d at 182, the claimant argued that to determine Fund liability for permanent total disability, a subsequent work-related injury can be combined with *all* disabilities so long as one qualifies as a preexisting disability under section 287.220.3(2). The Missouri Supreme Court relied on the plain language of section 287.220.3(2)(a)b to reject the claimant's argument:

> [The statute] specifies that the subsequent work-related injury must combine "with the preexisting disability, *as set forth in items (i), (ii), (iii), or (iv) of subparagraph a. of this paragraph*." By specifying that the preexisting disability must qualify under one of the four eligibility criteria in the first condition, the legislature excluded disabilities that are not the primary injury and that do not qualify under the first condition from being considered when determining if the claimant meets the second condition. Therefore, an employee satisfies the second condition by showing the primary injury results in [permanent total disability] when combined with *all* preexisting disabilities *that qualify* under one of the four eligibility criteria listed in the first condition.
>
> . . . .
>
> The existence of non-qualifying disabilities does not count against (or for) the claimant in evaluating whether he meets the second threshold condition.

18

*Id.* (emphasis in original). Because Schebaum's preexisting hearing loss does not qualify as a preexisting disability for purposes of Fund liability under section 287.220.3(2), the Commission properly disregarded the preexisting hearing loss when determining whether Schebaum established a compensable permanent total disability claim against the Fund.

Point Two is denied.

## Conclusion

The Commission's Final Award is affirmed.[5]

_____
Cynthia L. Martin, Judge

All concur

---

[5]This case is distinguishable from *Swafford*, 2022 WL 453139 at *8-9, where we permitted the employee "to present additional evidence on remand to satisfy the governing legal standard as clarified by *Parker*." The employee in *Swafford* argued, and we agreed, that the Commission improperly ignored the testimony of two experts which established that two preexisting disabilities, the employee's AS and cardiac conditions, qualified as preexisting disabilities under section 287.220.3(2)(a)a(iii), requiring a remand. *Id.* at 7-8. Here, Schebaum presented evidence through Eldred that irrespective of his hearing loss, Schebaum was permanently and totally disabled as a result of his primary left knee injury and preexisting right knee injury. The ALJ did not ignore this evidence, but instead expressly found Eldred's testimony to be internally inconsistent and not credible. The Commission applied *Parker*, but adopted the ALJ's credibility determination, and thus the ALJ's conclusion that Schebaum was not permanently and totally disabled based solely on his two knee injuries. Schebaum has not challenged the rejection of Eldred's testimony that a qualifying preexisting disability (his right knee injury) combined with his primary work injury to the left knee to cause him permanent and total disability.

19