

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| JAMES SWAFFORD, | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD84562 |
| | ) | |
| TREASURER OF MISSOURI AS | ) | FILED: February 15, 2022 |
| CUSTODIAN OF SECOND | ) | |
| INJURY FUND, | ) | |
| Respondent. | ) | |

**Appeal from the Labor and Industrial Relations Commission**

**Before Division One: W. Douglas Thomson, P.J.,
and Alok Ahuja and Karen King Mitchell, JJ.**

James Swafford appeals from a Final Award issued by the Labor and Industrial Relations Commission, which denied Swafford's claim for workers' compensation benefits against the Second Injury Fund. Swafford suffered a work-related injury in October 2017. He contended that his 2017 primary injury combined with multiple preexisting medical conditions to render Swafford permanently and totally disabled. On appeal, Swafford contends that the Commission arbitrarily disregarded the expert testimony which he offered to establish a causal relationship between his preexisting medical conditions and his current disability. We reverse.

## Factual Background

Swafford worked as a hostler for Waller Truck Company starting in 2014. Swafford's primary responsibility was transporting semi-trailers from one location to another.

Prior to his October 2017 primary injury, Swafford had multiple preexisting disabilities. First, Swafford suffered from ankylosing spondylitis (or "AS"), a congenital condition which caused Swafford's spine and rib bones to fuse together over time. This condition caused him "constant pain," difficulty breathing due to reduced chest expansion, "bad" or curved posture, and a limited range of motion.

Swafford also suffered from various cardiac conditions, including hypertrophic cardiomyopathy, mitral valve regurgitation, and atrial fibrillation. Swafford underwent multiple procedures to address these cardiac conditions. He was unemployed and received disability benefits between 2002 to 2007 due to his cardiac conditions. In addition to causing difficulty breathing, Swafford's cardiac conditions prevented him from treating the pain from his ankylosing spondylitis with non-steroidal anti-inflammatory drugs ("NSAIDs").

Lastly, Swafford had suffered from right shoulder pain since 2012, which was associated with his repetitive single-handed cranking of jacks used to adjust the height of semi-trailers weighing between 20,000 and 50,000 pounds. Starting in about 2016, Swafford was diagnosed with bursitis (or chronic pain and inflammation) in his right shoulder, which required steroid injections every three-to-four months.

Despite his preexisting conditions, Swafford was working full-time at Waller, without restrictions, until he suffered the primary workplace injury on October 6, 2017. On that date, Swafford slipped while getting out of a truck and was left hanging by his right arm. Swafford "felt a pop" in his shoulder. Swafford was diagnosed with a "moderately large rotator cuff tear" and a labrum tear, both confirmed by magnetic resonance imaging ("MRI"). Swafford's elbow was also painful and swollen following the incident.

Following the primary injury, Swafford has suffered "constant tightness in the right shoulder and significant pain." He has diminished grip strength. He

cannot raise anything above chest level without suffering tremors. He cannot lift a gallon of milk or throw anything overhead. Exercise increases the pain. Swafford testified that household activities have become more difficult and/or painful since his primary injury, and that he is no longer able to engage in his favorite hobbies of bowling, hunting, and fishing.

Swafford also reported that he sleeps poorly due to pain. He generally wakes up eight-to-ten times per night. Swafford cited his ankylosing spondylitis as the "main reason" for his sleep issues, but testified that the primary injury in October 2017 made his sleep "even worse." Swafford also complained that his right hand is now constantly numb at night.

Swafford was examined by Dr. Brent Koprivica, who assessed the extent of each of Swafford's preexisting disabilities. Dr. Koprivica found that all three of Swafford's preexisting conditions (ankylosing spondylitis; cardiac issues; and bursitis in the right shoulder) presented permanent and significant obstacles to employment prior to the primary injury. Dr. Koprivica also found that Swafford's preexisting disabilities "were of a level of significance that they had the potential to combine with the disability attributable to the October 6, 2017, work injury and result[ ] in enhanced disability." Dr. Koprivica attributed 25% permanent partial disability to the body as a whole as a result of Swafford's cardiac conditions, 25% permanent partial disability to the body as a whole due to Swafford's ankylosing spondylitis and chronic pain, and 10% permanent partial disability to the right upper extremity at the level of the shoulder relating to Swafford's preexisting shoulder injury. Dr. Koprivica rated the disability stemming from the October 6, 2017 work injury at 20% permanent partial disability to the body as a whole.

Dr. Koprivica found that there was a "significant synergistic effect" between Swafford's "significant preexisting industrial disabilities" and the additional disability stemming from the October 6, 2017 work injury. Dr. Koprivica opined

3

that the combination of Swafford's preexisting disabilities and the disability associated with the primary injury rendered him permanently and totally disabled.

Swafford's employer sent him to be examined by Dr. Erich Lingenfelter, an orthopedic surgeon. Dr. Lingenfelter opined that Swafford has "AC[, or acromioclavicular,] joint arthropathy and mechanical impingement both from a fall as well as his pre-existing AS."[1] Dr. Lingenfelter also found that Swafford's October 2017 fall was the sentinel event causing the AC joint arthropathy and inflammatory bursitis. Dr. Lingenfelter found that Swafford is a "very poor candidate" for surgical treatment, given his "hypertrophic cardiomyopathy and other significant medical issues." Dr. Lingenfelter also attributed an "equal share [of the] blame" for Swafford's disability to his ankylosing spondylitis, as his AS has caused the scapula (or shoulder blade) to be "postured" in such a position that Swafford "cannot elevate and protract [his shoulder joint] regularly in order to allow more room for the supraspinatus outlet." Dr. Lingenfelter stated that this condition "creates the impingement phenomenon, . . . and is likely [an] equal . . . contributing factor" to the disability associated with Swafford's right-shoulder injury.

"In summary," Dr. Lingenfelter stated, Swafford "has significant preexisting pathology and some things that are equally contributing to his issues." While Dr. Lingenfelter found that Swafford's October 6, 2017 fall was the "sentinel event that created the chronic inflammatory bursitis," the condition is "likely exacerbated by his disease process."

Terry Cordray, a certified rehabilitation counselor, performed a vocational evaluation of Swafford. Cordray considered Swafford's preexisting disabilities, primary injury, and current physical limitations, as well as his age and levels of

---

[1] Dr. Lingenfelter's report was generated by dictation software, and does not always contain proper grammar and punctuation. We have silently added appropriate punctuation where necessary.

skill and education. Cordray determined that Swafford is "totally vocationally disabled."

After settling his claim with his employer Waller, Swafford sought compensation from the Second Injury Fund. The Fund offered no evidence at his trial. Swafford's claim was rejected by an Administrative Law Judge ("ALJ"), who concluded that Swafford had failed to demonstrate that he suffered from a qualifying preexisting disability. Swafford applied for review by the Commission. In a two-to-one decision, the Commission affirmed the ALJ's decision. The Commission majority agreed with the ALJ that Swafford's preexisting disabilities either did not meet the required 50-week threshold specified in § 287.220.3(2)(a)a,[2] or that he had failed to prove that those preexisting conditions "significantly and directly aggravate[d] or accelerate[d]" his October 2017 primary work injury, as required by § 287.220.3(2)(a)a(iii).

Swafford appeals.

### Standard of Review

This Court reviews all final decisions, findings, rules, and orders of the Commission to determine whether the same are supported by competent and substantial evidence upon the whole record. The Commission's decision will be affirmed unless: (1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award.

*Annayeva v. SAB of TSD of City of St. Louis*, 597 S.W.3d 196, 198 (Mo. 2020) (citations and internal quotation marks omitted). "An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003).

---

[2] Statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, as updated by the 2021 Cumulative Supplement.

5

"The Commission's factual findings are binding and conclusive only to the extent they are supported by sufficient competent evidence and were reached in the absence of fraud." *Harris v. Ralls Cty.*, 588 S.W.3d 579, 594 (Mo. App. E.D. 2019) (citation omitted).  We need not view the evidence in the light most favorable to the Commission.  *Hampton*, 121 S.W.3d at 223.  However, we "must defer to the commission's findings on issues of fact, the credibility of the witnesses, and the weight given to conflicting evidence." *Greer v. SYSCO Food Servs.*, 475 S.W.3d 655, 664 (Mo. 2015).  "Questions of law are reviewed *de novo*.  [We are] not bound by the commission's interpretation and application of the law, and no deference is afforded to those determinations." *Id.*

## Discussion

"The Fund compensates workers who become permanently and totally disabled as a result of a combination of past disabilities and a later primary work injury." *Lynch v. Treasurer*, 635 S.W.3d 573, 581 (Mo. App. E.D. 2021) (citing § 287.220).

There are two subsections within § 287.220 which determine the Fund's liability, depending on the date of the injuries involved.  Where all work-related injuries (including the injuries causing the preexisting disability and the subsequent compensable injury) occurred prior to January 1, 2014, § 287.220.*2* is applicable.  *Cosby v. Treasurer*, 579 S.W.3d 202, 207 (Mo. 2019).

Section 287.220.*3* applies where (as here) the primary work injury occurred after January 1, 2014, regardless of when the preexisting disabilities arose.  *Id.*  Section 287.220.3(2) provides:

> Claims for permanent total disability . . . against the second injury fund shall be compensable only when . . . :
>
> > (a) a.  An employee has a medically documented preexisting disability equaling a minimum of fifty weeks of permanent partial disability compensation according to the

6

medical standards that are used in determining such compensation which is:

> (i) A direct result of active military duty . . . ; or

> (ii) A direct result of a compensable injury [which has arisen out of and in the course of employment]; or

> (iii) Not a compensable injury, but such preexisting disability directly and significantly aggravates or accelerates the subsequent work-related injury and shall not include unrelated preexisting injuries or conditions that do not aggravate or accelerate the subsequent work-related injury; or

> (iv) A preexisting permanent partial disability of an extremity, loss of eyesight in one eye, or loss of hearing in one ear, when there is a subsequent compensable work-related injury as set forth in subparagraph b of the opposite extremity, loss of eyesight in the other eye, or loss of hearing in the other ear; and

> b. Such employee thereafter sustains a subsequent compensable work-related injury that, when combined with the preexisting disability,[3] as set forth in items (i), (ii), (iii), or (iv) of subparagraph a. of this paragraph, results in a permanent total disability as defined under this chapter[.]

Here, the Commission found that Swafford had failed to meet his burden to prove that any of his preexisting disabilities met the statutory requirements of § 287.220.3(a)a.

The ALJ concluded that Swafford's preexisting shoulder condition did not meet the threshold of 50 weeks of disability. Swafford does not challenge this determination on appeal.

All parties agree that Swafford's preexisting ankylosing spondylitis and cardiac conditions are not a direct result of active military duty or a compensable

---

[3] Section 1.030 instructs that the singular form of words used in statutes should be interpreted to include the plural. "Therefore, section 287.220.3(2)(b) should be read to include 'when combined with the preexisting disabilities.'" *Treasurer v. Parker*, 622 S.W.3d 178, 182 (Mo. 2021).

injury arising out of and in the course of his employment. Moreover, those conditions do not relate to the opposite extremity, eye, or ear as Swafford's primary injury. Thus, the only question is whether these preexisting disabilities fall within § 287.220.3(2)(a)a(iii).

Although Swafford's cardiac conditions and ankylosing spondylitis each met the 50-week threshold, the ALJ found that there was "no medical evidence opining that any of the prior conditions significantly and directly aggravated or accelerated the primary right shoulder injury." In concluding that Swafford had failed to establish that his cardiac conditions and ankylosing spondylitis "aggravated or accelerated the primary right shoulder injury," the ALJ did not address Dr. Lingenfelter's conclusion that Swafford's cardiac conditions rendered him a "very poor candidate" for surgical treatment of his right-shoulder injury, or his conclusion that Swafford's ankylosing spondylitis bore an "equal share [of the] blame," and constituted an "equal . . . contributing factor," with respect to the disability associated with Swafford's right shoulder. Nor did the ALJ's decision refer to Dr. Koprivica's conclusion that there was a "significant synergistic effect" between Swafford's "significant preexisting industrial disabilities" and the additional disability stemming from the October 6, 2017 work injury.

In a 2-1 decision, the Commission affirmed and adopted the ALJ's findings and conclusions. The Commission's Final Award supplemented the ALJ's decision, by making the following findings concerning Dr. Lingenfelter's opinions:

> Dr. Lingenfelter's vaguely worded report, referencing employee's ankylosing spondylitis and hypertrophic cardiomyopathy as preexisting pathology that contributed to employee's right shoulder condition, . . . fall[s] short of establishing, as a factual matter, that employee's ankylosing spondylitis and hypertrophic cardiomyopathy *significantly and directly* aggravated his primary injury.

The Commission's denial of benefits was based solely on its determination that Swafford had failed to prove a qualifying preexisting disability under

8

§ 287.220.3(2)(a)a.  The Commission did not address whether Swafford was permanently and totally disabled based on a combination of his qualifying preexisting disabilities and the disability associated with the primary injury, as required by § 287.220.3(2)(a)b.

Swafford argues that the Commission erroneously disregarded the testimony of Dr. Lingenfelter and Dr. Koprivica, which established that his preexisting cardiac conditions and ankylosing spondylitis aggravated Swafford's primary right-shoulder injury.  We agree.  Generally, "[a]cceptance or rejection of evidence is . . . an issue for the Commission to determine."  *Hazeltine v. Second Injury Fund*, 591 S.W.3d 45, 59 (Mo. App. E.D. 2019) (citation omitted).  "When the Commission reaches its decision by expressly making credibility findings, the Commission may disbelieve uncontradicted and unimpeached testimony."  *Id.*  However, "where the record is 'wholly silent concerning the Commission's weighing of credibility' and neither the claimant nor the experts testifying on his . . . behalf are contradicted or impeached, the Commission 'may not arbitrarily disregard and ignore competent, substantial and undisputed evidence.'"  *Id.* (quoting *Houston v. Roadway Express, Inc.*, 133 S.W.3d 173, 179-80 (Mo. App. S.D. 2004)); *see also Dunn v. Treasurer*, 272 S.W.3d 267, 275 n.9 (Mo. App. E.D. 2008) (distinguishing a case in which "the final award was silent on the question of credibility," from a case in which "the Commission expressly declared that it disbelieved the testimony" of a medical expert); *Highley v. Von Weise Gear*, 247 S.W.3d 52, 57 (Mo. App. E.D. 2008) (likewise distinguishing between cases in which "there is an express declaration that the commission disbelieved uncontradicted or unimpeached testimony," *versus* cases in which "the record is silent concerning the commission's credibility determination").

In this case, the Commission did not simply make a credibility determination when it concluded that Dr. Lingenfelter's report was "vaguely worded" and "fall[s] short" of establishing that Swafford's preexisting conditions significantly and

9

directly aggravated his primary injury. Instead, the Commission rejected the substance of Dr. Lingenfelter's opinions, and its decision to do so must be supported by sufficient competent evidence. In *Malam v. Missouri Department of Corrections*, 492 S.W.3d 926 (Mo. 2016), the Commission rejected the testimony of the claimant's medical expert, who opined that a workplace incident was "'the direct, proximate and prevailing factor precipitating [the claimant's] hypertensive crisis.'" *Id.* at 927. The Commission's decision noted the distinction between a "prevailing factor" (which would be sufficient to establish that an injury was work-related), and a "precipitating factor" (which would not establish a sufficient causal link). *Id.* at 928; *see* §§ 287.020.2, .3(1) (distinguishing between a "precipitating factor" and "the prevailing factor"). The Commission found that, "'absent further explanation as to what Dr. Koprivica meant by choosing those specific words, we simply are unable to conclude that Mr. Malam has proven the requisite degree of causation to satisfy the requirements of the statute.'" 492 S.W.3d at 928.

Although the Supreme Court acknowledged "'that it is the Commission's function to determine credibility of witnesses,'" *id.* at 929 (citation omitted), it held that "this is not a case in which the commission made a credibility determination as to competing medical experts. Instead, this case involves an overly technical and parsed analysis of Dr. Koprivica's testimony that overlooks the plain meaning of what he said." *Id.* The Court explained that "Dr. Koprivica's testimony was not equivocal. At no point did Dr. Koprivica state that Mr. Malam's accident was merely a 'precipitating factor' in relation to another 'prevailing factor.'" *Id.* "Read in context, the plain meaning of Dr. Koprivica's testimony was that the accident was the prevailing factor causing or, in his words, 'precipitating' Mr. Malam's hypertensive crisis." *Id.*

In *Fields v. Treasurer*, 628 S.W.3d 803 (Mo. App. E.D. 2021), the Eastern District reversed a similar Commission decision finding a claimant's expert medical

testimony not to be persuasive. In *Fields*, the Commission stated that a claimant had "not persuaded us" that a primary injury had combined with the claimant's preexisting disabilities to produce permanent and total disability – even though the claimant had presented uncontradicted medical testimony establishing that combined effect. *Id.* at 816. The Eastern District held that the Commission's statement that it was "not persuaded" by the claimant's evidence "is a medical determination – the lack of combination of disabilities – not a credibility determination." *Id.* The Court then reviewed the record, and determined that no evidence supported the Commission's conclusion that the claimant had failed to prove the necessary combination. *Id.* at 816-17. The Court accordingly reversed the Commission's denial of benefits. *Id.* at 817.

In other cases, this Court has similarly held that a Commission decision finding that the claimant's expert witnesses were unpersuasive is not a credibility determination to which we must blindly defer, but is instead an assessment of the substantive weight of the expert witnesses' testimony, which must be supported by substantial evidence. *See, e.g.*, *Hazeltine*, 591 S.W.3d at 63-64 (rejecting the Commission's conclusion that claimant's physician-experts were "not persuasive" in opining that the combination of preexisting conditions and primary injury resulted in permanent and total disability, where the Commission erroneously stated that the claimant's experts had not reviewed claimant's prior medical records, and took an overly "narrow view" of the experts' testimony concerning the exacerbation of the claimant's preexisting symptoms); *Abt v. Miss. Lime Co.*, 388 S.W.3d 571, 579 (Mo. App. E.D. 2012) (where the Commission rejected a physician's opinions based on its conclusion that the physician had failed to take account of the claimant's prior injuries, its rejection of the physician's opinions was not a credibility determination "rooted in disbelief," "but is rather a criticism" of the substance of the expert's opinions which must be supported by substantial and competent evidence); *Highley*,

247 S.W.3d at 57-58 (concluding that "the commission did not make a credibility determination regarding the testimony of" a physician-expert, where it discounted the expert's testimony based on its conclusion that he had not considered the claimant's complete work history; reversing where the record failed to support the Commission's characterization of the basis for the expert's opinions).

In this case, as in *Malam* and *Fields*, the Commission's dismissal of Dr. Lingenfelter's report as "vaguely worded" is inaccurate, and relies on an "overly technical and parsed analysis" of what he said. *Malam*, 492 S.W.3d at 929. Dr. Lingenfelter was explicit that (1) although surgery might otherwise have been appropriate to remedy the effects of Swafford's October 6, 2017 right-shoulder injury, Swafford's cardiac conditions made him a "very poor candidate" for surgical treatment; and (2) Swafford's preexisting ankylosing spondylitis caused a mis-positioning of his scapula which "creates the impingement phenomenon" in his right shoulder, and bears an "equal share [of the] blame" for the disability associated with Swafford's right shoulder. It is no response to Dr. Lingenfelter's specifically worded opinions, to mischaracterize and discount them as "vaguely worded." Although Dr. Lingenfelter may not have used the precise language of § 287.220.3(2)(a)a and specifically opined that Swafford's preexisting conditions "aggravated" his primary right-shoulder injury, the testimony of medical experts need not use "magic words" to constitute competent and substantial evidence; instead, the Commission must consider the "clear and plain import" of the expert's testimony. *Treasurer v. Majors*, 506 S.W.3d 348, 353 (Mo. App. W.D. 2016).

Significantly, the ALJ's decision (which the Commission adopted) specifically credited Dr. Lingenfelter's opinion that Swafford's ankylosing spondylitis caused mispositioning of his scapula, which resulted in decreased range of motion in Swafford's right shoulder. The ALJ's decision found:

Dr. Lingenfelter noted the Claimant's decreased range of motion in the right shoulder and also found decreased range of motion present as a result of scapular posturing which is a "manifestation of his ankylosing spondylitis." Dr. Lingenfelter noted the Claimant has a limited ability to protract or move his scapula in a coordinated position and his posture is increasingly poor because his spine is likely fused at or near those points.

Thus, the ALJ himself accepted Dr. Lingenfelter's opinion that Swafford's ankylosing spondylitis contributed to the level of disability associated with his right shoulder. This explicit reliance on Dr. Lingenfelter's opinions "bespeaks [the] Commission's recognition and acceptance of Employee's evidence as credible, not a rejection thereof." *Houston*, 133 S.W.3d at 180; *see also Williams v. City of Jennings*, 605 S.W.3d 152, 160 (Mo. App. E.D. 2020) (holding that the Commission erroneously disregarded a physician's testimony concerning the role of the claimant's preexisting mental-health conditions in causing claimant's permanent and total disability; noting that "[t]he ALJ explicitly found Dr. Brockman to be persuasive in creating an informed opinion of Claimant's current psychological condition"). It was arbitrary for the Commission to discount Dr. Lingenfelter's opinions as "vaguely worded," when its own decision relied on his opinions concerning the relationship between Swafford's AS and his right-shoulder disability.

Additionally, we note that the ALJ and the Commission failed to mention in any fashion Dr. Koprivica's opinion that there was a "significant synergistic effect" between Swafford's preexisting disabilities, and the disability resulting from the primary injury. The Fund did not contest or impeach Dr. Koprivica's opinions, nor did it present evidence of its own. Neither the Commission nor the ALJ made express credibility findings concerning Dr. Koprivica. The Commission was not entitled "to arbitrarily disregard the substantial and competent evidence" presented by Dr. Koprivica. *Williams v. Treasurer*, 598 S.W.3d 180, 188 (Mo. App. E.D. 2020) (quoting *Hazeltine*, 591 S.W.3d at 59); *see also State ex rel. GS Techs. Operating Co.*

13

*v. Pub. Serv. Comm'n*, 116 S.W.3d 680, 692-93 (Mo. App. W.D. 2003) (Public Service Commission acted arbitrarily and capriciously where it wholly failed to address the testimony of a ratepayer's expert witness concerning one of two alleged acts of imprudence by an electric utility); *Barry Serv. Agency Co. v. Manning*, 891 S.W.2d 882, 892 (Mo. App. W.D. 1995) (holding that an agency which completely failed to consider probative evidence on a disputed issue acted arbitrarily and capriciously).

The testimony of Drs. Lingenfelter and Koprivica, which the Commission improperly discounted or ignored, constituted substantial and competent evidence to find that Swafford's preexisting disabilities qualified under § 287.220.3(2)(a)a(iii). Dr. Koprivica's disability ratings established that Swafford's ankylosing spondylitis and cardiac conditions meet the 50-week threshold required by § 287.220.3(2)(a)a. In addition, the testimony of the two physicians established that Swafford's preexisting conditions "directly and significantly aggravate[d]" his primary work injury, as required by § 287.220.3(2)(a)a(iii). Dr. Lingenfelter explained that Swafford's preexisting cardiac condition prevented him from receiving surgical treatment for his shoulder injury. Dr. Lingenfelter also opined that Swafford's ankylosing spondylitis directly and significantly aggravated his October 6, 2017 work injury by limiting his range of motion, and "creat[ing] the impingement phenomenon" which caused pain and inflammation in his right shoulder. Dr. Lingenfelter specifically stated that Swafford's AS takes an "equal share [of the] blame" for the right shoulder's current impaired condition. For his part, Dr. Koprivica testified to a "significant synergistic effect" between Swafford's preexisting conditions and his primary work injury. When considered in tandem with Dr. Lingenfelter's more specific opinions, Dr. Koprivica's testimony that Swafford's preexisting disabilities operated synergistically with the primary injury to produce greater total disability constitutes some additional evidence that the preexisting disabilities "aggravated" the primary injury.

The statute does not define what it means for a preexisting disability to "directly and significantly aggravate[ ] . . . the subsequent work-related injury." "In the absence of statutory definitions, we look to the dictionary to determine the plain and ordinary meaning of terms." *Moss v. Treasurer*, 570 S.W.3d 110, 116 (Mo. App. W.D. 2018) (citing *Mantia v. Mo. Dep't of Transp.*, 529 S.W.3d 804, 809 (Mo. 2017)). "Direct" is defined as "characterized by [a] close logical, causal, or consequential relationship." *Direct*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/direct. "Significant" is defined as "large enough to be noticed or have an effect." *Significant*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/significant. Here, the evidence establishes that Swafford's preexisting AS was an equal cause of his right-shoulder disability, and his preexisting cardiac conditions foreclosed surgical treatment for his right-shoulder injury. These preexisting conditions have a "direct" causal connection to the level of disability Swafford is experiencing relating to his right shoulder, and they are "large enough" contributors to have a noticeable effect, and are thus "significant."

The opinions of Drs. Koprivica and Lingenfelter also establish that Swafford's preexisting conditions "aggravate[d]" his right-shoulder injury. To "aggravate" means "to make worse, more serious, or more severe; to intensify unpleasantly." *Aggravate*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/aggravate. "Aggravation" will be found where a condition or event causes "additional harm" to an individual, beyond that which would otherwise exist. *State ex rel. Baldwin v. Gaertner*, 613 S.W.2d 638, 640 (Mo. 1981) (where an individual is injured by a tortfeasor and a subsequent treating physician commits malpractice, the physician is only liable for their "treatment aggravating said original injury"; citations omitted); *see also, e.g.*, *Rader v. Werner Enterps., Inc.*, 360 S.W.3d 285, 298 (Mo. App. E.D. 2012) (employer will be liable for a work-related accident's aggravation of a preexisting non-disabling condition, where the work

15

injury "escalates the level of disability" associated with the preexisting condition; citing *Portwood v. Treasurer*, 219 S.W.3d 289, 293–94 (Mo. App. W.D. 2007)). We have previously found sufficient evidence of "aggravation" under § 287.220.3(2)(a)a(iii) when an expert testified that the primary injury did not heal as anticipated due to the claimant's preexisting conditions. *Wilson v. Treasurer*, 632 S.W.3d 874, 879 (Mo. App. W.D. 2021). The expert medical testimony in this case established that Swafford's preexisting cardiac conditions and ankylosing spondylitis made the disability associated with Swafford's right shoulder worse than it would have been based on the primary injury alone. Thus, Swafford's preexisting conditions "aggravated the subsequent work-related injury" within the meaning of § 287.220.3(2)(a)a(iii).

The Commission's conclusion that Swafford had failed to prove a qualifying preexisting disability was not supported by substantial competent evidence, and must be reversed. The question remains, however, whether Swafford's qualifying preexisting disabilities combined with his primary injury to render Swafford permanently and totally disabled under § 287.220.3(2)(a)b. The Commission did not reach this issue based on its conclusion that Swafford had failed to prove any qualifying preexisting disabilities. Because "[o]ur standard of review does not permit us to make factual findings" which the Commission has failed to make, *Dubuc v. Treasurer*, 597 S.W.3d 372, 384 (Mo. App. W.D. 2020) (citation omitted), the case must be remanded for the Commission to make the determinations required by § 287.220.3(2)(a)b.

On remand, the Commission should permit Swafford to present additional evidence concerning whether his qualifying preexisting disabilities combined with the primary injury to "result[ ] in a permanent total disability." Following the Supreme Court's decision in *Treasurer v. Parker*, 622 S.W.3d 178 (Mo. 2021), only those preexisting disabilities which qualify under one of the eligibility criteria listed

16

in § 287.220.3(2)(a)a may be considered in determining whether a claimant has been rendered permanently and totally disabled. 622 S.W.2d at 182. Currently, two of Swafford's experts have opined that he is permanently and totally disabled. In concluding that Swafford was permanently and totally disabled, however, it appears that Swafford's experts relied on all three of his preexisting disabilities: cardiac conditions; ankylosing spondylitis; and his preexisting right-shoulder injury. In a finding Swafford does not challenge, the ALJ concluded that Swafford's prior right-shoulder condition did not meet the required threshold of 50 weeks of disability. Accordingly, under *Parker*, his preexisting right-shoulder injury cannot be considered in determining whether he is entitled to compensation from the Second Injury Fund for permanent and total disability. Instead, Swafford is required to present evidence that his cardiac and AS conditions combined with his primary injury to render him permanently and totally disabled, *without regard to his preexisting right-shoulder condition*. Swafford's existing expert testimony may not address the issue as framed by *Parker*.

Swafford's case was tried on November 21, 2019, seventeen months before the Supreme Court issued its decision in *Parker*. At the time of Swafford's trial, no Missouri appellate court had addressed whether _all_ of a claimant's preexisting medical conditions could be considered in determining whether the claimant was permanently and totally disabled, assuming that the claimant had at least one preexisting disability meeting the criteria of § 287.220.3(2)(a)a. Under § 287.220.2, which applies to *pre-2014* injuries, the Missouri Supreme Court had specifically held that _all_ preexisting disabilities must be considered in determining the claimant's overall level of disability, so long as the claimant has at least one preexisting disability satisfying the statutory threshold. *Treasurer v. Witte*, 414 S.W.3d 455, 467 (Mo. 2013). Moreover, subsequent to Swafford's trial, judges of this Court reached differing conclusions as to whether _all_ of a claimant's preexisting

17

conditions could be considered in assessing permanent and total disability, for post-2014 injuries governed by § 287.220.3. *Compare Treasurer v. Parker*, No. WD83030, 2020 WL 3966851, at \*8-\*10 (Mo. App. W.D. July 14, 2020) (2-1 decision concluding that <u>all</u> preexisting conditions must be considered, so long as the claimant had at least one preexisting disability satisfying § 287.220.3(2)(a)a), *with Bennett v. Treasurer*, 607 S.W.3d 251, 256-57 (Mo. App. E.D. 2020) (concluding that only those preexisting conditions which individually satisfy the criteria of § 287.220.3(2)(a)a may be considered in assessing permanent and total disability). This uncertainty was only resolved by the Supreme Court's 2021 decision in *Parker*.

Justice requires that Swafford be allowed to present additional evidence on remand to satisfy the governing legal standard as clarified by *Parker*. A claimant "should not be punished for failing to introduce evidence when [he] did not have the benefit of this Court's guidance as to the evidence necessary to make a submissible case." *Tharp v. St. Luke's Surgicenter-Lee's Summit, LLC*, 587 S.W.3d 647, 663 (Mo. 2019). When the law changes "on a point that materially affect[s] [the] case" while an appeal is pending, it would be "'improper and unfair'" to deny the parties an opportunity to present evidence relevant to the newly announced legal standard. *Id.* at 662 (citing *Warren v. Paragon Techs. Grp., Inc.*, 950 S.W.2d 844, 846 (Mo. 1997); *Dietz v. Humphreys*, 507 S.W.2d 389, 392 (Mo. 1974)).

## Conclusion

We reverse the Commission's decision, and remand for further proceedings consistent with this opinion.

_____
Alok Ahuja, Judge

All concur.

18